Reed R. Kathrein (State Bar No. 139304)
Peter E. Borkon (State Bar No. 212596)
Danielle Charles (State Bar No. 291237)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Tel: 510-725-3000
Fax: 510-725-3001
reed@hbsslaw.com
peterb@hbsslaw.com
daniellec@hbsslaw.com

*Attorneys for Plaintiffs*
*[Additional counsel listed on signature page]*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE MACDONALD, Individually and on Behalf of All Others Similarly Situated,<br><br>         Plaintiff,<br><br>  v.<br><br>DYNAMIC LEDGER SOLUTIONS, INC., a Delaware corporation, TEZOS STIFTUNG, a Swiss Foundation, KATHLEEN BREITMAN, an Individual, ARTHUR BREITMAN, an Individual, TIMOTHY COOK DRAPER, an individual, DRAPER ASSOCIATES, JOHANN GEVERS, DIEGO PONZ, GUIDO SCHMITZ-KRUMMACHER, BITCOIN SUISSE AG, NIKLAS NIKOLAJSEN, and DOES 1-100, INCLUSIVE,<br><br>         Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**VERIFIED COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CALIFORNIA CORPORATIONS CODE § 25110**<br><br>**(2) UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.***<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................2

II.     NATURE OF THE PROCEEDING AND RELIEF SOUGHT ...............................5

III.    JURISDICTION AND VENUE ............................................................................6

IV.     PARTIES ...............................................................................................................7

V.      SUBSTANTIVE ALLEGATIONS .......................................................................11

      A.      Background on Distributed Ledger or Blockchain-Enabled Means For Capital Raising (aka "ICOs") ...............................................................................11

      B.      The Tezos ICO ...........................................................................................13

      C.      The Tezos Tokens Are Securities ...............................................................21

            a.      Investors in the Tezos ICO Invested Money ...................................22

            b.      Investors Had a Reasonable Expectation of Profits ..........................22

            c.      Investors Expect Those Profits to Be Derived from the Managerial Efforts of Others ...........................................................................28

      D.      Tezos Defendants Were Required to Qualify Offers and Sales of Securities Unless a Valid Exemption Applies .......................................................29

      E.      Infighting, Governance Problems, and Delays Emerge ...........................30

      F.      Defendants Are Selling, Converting and Dissipating the Consideration Collected From the Class .....................................................................31

VI.     CLASS ALLEGATIONS ......................................................................................33

FIRST COUNT VIOLATION OF CAL. CORPORATIONS CODE § 25110 (AGAINST ALL DEFENDANTS) ...............................................................................35

SECOND COUNT UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ*.  (AGAINST ALL DEFENDANTS) ...........................................36

PRAYER FOR RELIEF ...........................................................................................37

JURY TRIAL DEMAND ..........................................................................................38

1    Plaintiff Bruce MacDonald, individually and on behalf of all others similarly situated

2    ("Plaintiff"), by Plaintiff's undersigned counsel, for Plaintiff's Complaint against Defendants, alleges

3    the following based upon personal knowledge as to himself and his own acts, and based upon

4    information and belief as to all other matters, based on the investigations conducted by and through

5    Plaintiff's attorneys, which included among other things, a review of public statements issued by

6    Defendants, U.S. Securities and Exchange Commission ("SEC") filings and reports, media reports,

7    interviews, social media information, as well as other commentary, analysis, and information

8    concerning Defendants Dynamic Ledger Solutions, Inc. (DLS), Tezos Stiftung (aka the "Tezos

9    Foundation"), Kathleen Breitman, Arthur Breitman, Timothy Cook Draper, Draper Associates,

10   Johann Gevers, Diego Ponz, Guido Schmitz-Krummacher, Bitcoin Suisse AG, and Niklas

11   Nikolajsen, the blockhain and digital currency/cryptocurrency landscape, and the securities laws.

## I.    INTRODUCTION

*"[Initial Coin Offerings] represent the most pervasive, open, and notorious*
*violation of the federal securities laws since the Code of Hammurabi."*

**- Former SEC Commissioner Joseph Grundfest**

1.    This is a class action brought on behalf of all persons who purchased Tezos tokens

(aka "XTZ", "Tezzies" or "tez") by contributing fiat currency (*e.g.,* U.S. Dollars) or other

consideration (including the blockchain-based digital currencies bitcoin (BTC) and/or Ethereum

("ETC" or "ether")) to the Tezos "Initial Coin Offering" ("ICO") in July 2017.

2.    Tezos tokens are securities within the meaning of the California Corporations Code §

25019. As such, any offering or sale of such securities are required to be qualified under Cal. Corp

Code §§ 25111, 25112 or 25113. But in violation of California Corporations Code § 25110 and

California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*), Defendants engaged

in an illegal sale of unqualified securities by offering and selling Tezos tokens without qualifying the

securities pursuant to the California Corporations Code.

1    3.    In sum, Defendants capitalized on the recent enthusiasm for blockchain technology

2  and cryptocurrencies to raise funds through the ICO, illegally sold unqualified and unregistered

3  securities, used a Swiss-based entity in an unsuccessful attempt to evade U.S. securities laws, and are

4  now admittedly engaged in the conversion, selling, and possible dissipation of the proceeds that they

5  collected from the Class through their unregistered offering.[1]

6    4.    Purportedly to raise money for the implementation of the Tezos Blockchain —

7  described by Defendants as a "self-amending crypto-ledger"[2] — Defendants held an ICO, which is

8  similar in economic substance to a traditional Initial Public Offering ("IPO"). Through the ICO,

9  Defendants issued Tezos tokens to investors, in exchange for digital cryptocurrencies such as Bitcoin

10  and/or Ethereum. Investors participated in the ICO with the reasonable expectation that the Tezos

11  tokens would appreciate in value as a result of the efforts of Defendants, including Arthur and

12  Kathleen Breitman—enabling investors to exchange their Tezzies for other tokens, digital currencies,

13  and/or government-issued fiat currency (such as U.S. dollars).

14    5.    The Tezos ICO has been widely reported as the largest ICO to date,[3] with 65,627

15  Bitcoin and 361,122 Ethereum collected. At the time of the Tezos ICO, the digital currencies paid by

16  investors were valued at an estimated $232 million U.S. dollars. Today, the digital currencies

17  invested in the Tezos ICO are worth an estimated $1.2 billion U.S. Dollars as of December 11,

18  2017).

19    6.    Defendants have profited, or stand to profit, significantly from the ICO. The

20  shareholders of Defendant Dynamic Ledger Solutions, Inc. (DLS) include Defendants Kathleen

21  Breitman, Arthur Breitman, Timothy Cook Draper, and Draper Associates. According to a

22  "Transparency Memo" published on the Tezos website, once the Tezos blockchain is launched and

---

[1] *Diversifying the portfolio of the Tezos Foundation* <https://www.tezos.ch/diversifying-the-portfolio-of-the-tezos-foundation.html> [as of Dec. 1, 2017].

[2] Goodman, L.M., *Tezos — a self-amending crypto-ledger.* (Sept. 2, 2014) Tezos.com <https://www.tezos.com/static/papers/white_paper.pdf> [as of Dec. 1, 2017].

[3] Higgins, Stan, *$232 Million: Tezos Blockchain Project Finishes Record-Setting Token Sale* (July 13, 2017) coindesk <https://www.coindesk.com/232-million-tezos-blockchain-record-setting-token-sale/> [as of Dec. 1, 2017].

CLASS ACTION COMPLAINT - 3
Case No.:

1001464 V1

1    operational, "DLS' shareholders [*i.e.*, the Breitmans, Draper, and Draper Associates] will receive

2    8.5% of the contributions made during the fundraiser" and "a 10% allocation of the tokens" issued

3    over a period of 48 months.[4]

4            7.      Defendant Tezos Foundation, a Swiss company seeking non-profit status, currently

5    holds the digital currencies paid by Plaintiff and other investors, and describes itself as simply "an

6    organization dedicated to promoting the Tezos protocol."[5] The Foundation has no apparent legal

7    oversight or compulsion to do anything at all,[6] and has admitted to gradually converting ICO

8    proceeds into more traditional assets such as "cash, stocks, bonds, and precious metals" in order to

9    "diversify" its assets.[7]

10           8.      Defendants, keenly aware of the registration requirements of the federal and state

11   securities laws,[8] have attempted to skirt these laws through use of the Swiss-based Tezos Foundation,

12   as well as the characterization of the sale of the Tezos interests as charitable contributions or

13   donations. Defendants have even called the Tezos tokens the equivalent of "tote bags" received in

14   exchange for donating to a charity.[9] In reality, the supposed "contributions" or "donations" are, in all

15   material respects, identical to the attributes of the sale and purchase of an ownership interest in the

16   purported Tezos tokens, which are securities within the meaning of the securities laws.

17

18

19       [4] *Transparency Memo*. <https://www.tezos.com/dls> [as of Dec. 1, 2017].

20       [5] *Diversifying the portfolio of the Tezos Foundation* <https://www.tezos.ch/diversifying-the-portfolio-of-the-tezos-foundation.html> [as of Dec. 1, 2017].

21       [6] Under Schweizerisches Zivilgesetzbuch (Swiss Civil Code), Art. 84 C. Augsicht (Supervision),
     a supervisory authority shall ensure that a foundation's assets are used for its designated purposes.
22   However, as of August 2017, no supervision authority was designated for the Foundation.

23       [7] *Diversifying the portfolio of the Tezos Foundation* <https://www.tezos.ch/diversifying-the-portfolio-of-the-tezos-foundation.html> [as of Dec. 1, 2017].

24       [8] Sales of unqualified securities by both issuers and nonissuers are prohibited by the Corporate
     Securities Law of 1968 [California Corporations Code §§ 25110 and 25130] unless they are subject
25   to an exemption from qualification. The Tezos tokens were not, and are still not subject to an
26   exemption from qualification.
         [9] George, Alice Lloyd. *Behind the scenes with Tezos, a new blockchain upstart*, (Jul 12, 2017)
27   TechCrunch <https://techcrunch.com/2017/07/12/behind-the-scenes-with-tezos-a-new-blockchain-upstart/> [as of Dec. 2, 2017]

28   CLASS ACTION COMPLAINT - 4
     Case No.:

     1001464 V1

9.      In short, the ICO for the Tezos tokens was an illegal offer and sale of securities for which no qualification was in effect, and as to which no exemption from qualification was sought or available. The ICO was a generalized solicitation made using statements posted on the Internet and distributed throughout the world, including in the United States, and the securities were offered and sold to Plaintiff and the general public.

10.      Therefore, under Cal. Corp Code § 25503, Plaintiff and the Class are entitled to recover the consideration paid for the Tezos tokens with interest thereon at the legal rate, or the equivalent in monetary damages plus interest at the legal rate from the date of purchase. To the extent that there are others who participated in the violation(s) in the specific roles listed in Cal. Corp Code § 25504 and 25504.1, those persons are additionally liable "without any further need for privity between these secondarily liable actors and the plaintiff." *Moss v. Kroner* 197 Cal.App.4th 860, 875 (2011).

11.      Moreover, unless the Defendants are permanently restrained and enjoined from dissipating the proceeds of the ICO, they will continue to engage in the acts, practices, and courses of business set forth in this Complaint, including, but not limited to, the conversion, selling, and dissipation of ICO proceeds collected from the Class.

## II.      NATURE OF THE PROCEEDING AND RELIEF SOUGHT

12.      Plaintiffs bring this action pursuant to the California Corporate Securities Law of 1968 (Cal. Corp Code §§ 25110 and 25503) and California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*), and seek, as immediate relief, a temporary restraining order and a preliminary injunction against Defendants: (a) freezing Defendants' assets collected as, or derived from, proceeds of the ICO; and (b) enjoining Defendants from making further transfers, dissipations or conversions of the investments raised during the Tezos ICO, or using such funds in any further purchases or transactions.

13.      Plaintiffs also seek a final judgment: (a) certifying the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel and Plaintiff as class representative; (b)

imposing a constructive trust over the funds and assets rightfully belonging to Plaintiff and the Class; (c) awarding Plaintiff and the members of the Class the consideration paid for the Tezos tokens, with interest thereon at the legal rate, or the equivalent in monetary damages plus interest at the legal rate from the date of purchase pursuant to Cal. Corp. Code § 25503 against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon; (d) awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees, expert fees, witness fees and electronic discovery fees as permitted by law; and (e) granting such other and further relief as this Court may deem just and proper.

### III.   JURISDICTION AND VENUE

14.   This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as this is a class action where the controversy exceeds the sum or value of $5,000,000, at least one of the members of the class is a citizen of a State different from a Defendant, and at least one of the members of the class is a citizen of a State and one or more Defendants are citizens or subjects of a foreign state.

15.   Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

16.   Defendant Arthur Breitman and Defendant Kathleen Breitman (together, the "Breitmans") lived at their home at 111 North Rengstorff Ave #78, Mountain View, California 94043, in Santa Clara County during the relevant period. Defendant Dynamic Ledger Solutions, Inc. ("DLS") is operated out of Mountain View, California in Santa Clara County at the Breitmans' home. Defendant Timothy Draper and/or Draper Associates' operations are based in this District at 55 E. 3rd Avenue, San Mateo, CA 94401 and many of the acts and transactions giving rise to the violations of law complained of herein occurred in this District.

17.   This Court has personal jurisdiction over Defendants because at least one Defendant is operating, present, and/ or doing business within this District, and Defendants solicited and/or

CLASS ACTION COMPLAINT - 6
Case No.:

1001464 V1

1    contracted with investors in this District, including Plaintiff and the Class, to participate in the Tezos

2    ICO, and offered and sold Tezos tokens to residents of this District. Defendants have therefore

3    purposefully availed themselves of the benefits of operating both in the United States and in this

4    jurisdiction.

5        18.    Each Defendant has sufficient contacts within this District, or has otherwise

6    purposefully availed themselves of benefits from this District, or has property in this District, so as to

7    render the exercise of jurisdiction over each by this court consistent with traditional notions of fair

8    play and substantial justice.

9        19.    In connection with the acts, conduct and other wrongs alleged in this Complaint,

10   Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce to

11   offer and/or sell Tezos tokens through the ICO, including but not limited to mail, electronic mail,

12   interstate phone communications, interstate travel, and/or internet service providers, in promoting,

13   offering and selling Tezos tokens through the ICO complained of herein.

14               **IV.    PARTIES**

15

16       20.    Plaintiff Bruce MacDonald is a California resident and a citizen of the United States.

17   Plaintiff invested approximately 18.145 Ethereum in the Tezos ICO from a computer within the

18   United States to purchase 12,462.26 Tezos tokens.

19       21.    Defendant Dynamic Ledger Solutions, Inc. ("DLS") is a Delaware corporation with

20   its principal place of business in Mountain View, California, at the home of Defendants Arthur and

21   Kathleen Breitman (at 111 North Rengstorff Ave #78, Mountain View, CA, 94043). DLS is owned

22   and controlled by Defendants Arthur Breitman, Kathleen Breitman, Draper, and Draper Associates.

23   The Tezos.com website, which is based in the United States, states that DLS "owns all of the Tezos-

24   related intellectual property (IP), including the source code of the Tezos cryptographic ledger, logos,

25   and trademark applications associated with the name Tezos, domain names, and goodwill arising

26

27

28   CLASS ACTION COMPLAINT - 7
     Case No.:

     1001464 V1

from a set of a relationships with several contractors and potential customers in the financial technology market."[10]

22.     Defendant Tezos Stiftung (a.k.a. the "Tezos Foundation" or the "Foundation") is a Swiss foundation based in Zug, Switzerland, that is seeking not-for-profit status, but has not yet been granted such under Swiss law. Defendant Tezos Foundation was created to store the consideration raised from investors in the Tezos ICO. Since the ICO, the Foundation has shared funds with DLS. In addition, according to Foundation President Johann Gevers, "they [DLS] control the Foundation's domains, websites and email servers, so the Foundation has no control or confidentiality in its own communications."[11] The Foundation and DLS have negotiated a contractual agreement in which the Foundation will acquire DLS, along with its IP, existing business relationships with contractors and potential customers, as well as its trademark applications and domain names.[12] The Foundation has named Defendants Johann Gevers, Diego Ponz, and Guido Schmitz-Krummacher as its directors.[13]

23.     Defendant Arthur Breitman is the developer behind the Tezos cryptographic ledger. On information and belief, Arthur Breitman lived with his wife, Defendant Kathleen Breitman, at their home at 111 North Rengstorff Ave #78, Mountain View, California 94043 during the relevant period.

24.     Defendant Kathleen Breitman is the Chief Executive Officer of DLS. Mrs. Breitman has stated that she handles the operational aspects of the Tezos Blockchain and manages relationships with business partners, attorneys, and the Tezos marketing group.[14]

---

[10] *Transparency Memo*. <https://www.tezos.com/dls> [as of Dec. 1, 2017].

[11] Irrera, Anna, Steve Stecklow, and Brenna Hughes Neghaiwi, *Startup Tezos raised $232 million issuing a new digital currency — now key players are fighting* (Oct. 19, 2017) Business Insider <http://www.businessinsider.com/r-special-report-backroom-battle-imperils-230-million-cryptocurrency-venture-2017-10?r=UK&IR=T> [as of Dec. 1, 2017].

[12] *Transparency Memo*. <https://www.tezos.com/dls> [as of Dec. 1, 2017].

[13] *Id*.

[14] Fintech Podcast, Episode 138: Interview with Kathleen Breitman, CEO of Tezos, (June 16, 2017), https://www.youtube.com/watch?v=cDIgGY15krA&feature=youtu.be

CLASS ACTION COMPLAINT - 8
Case No.:

25.     Defendant Timothy Cook Draper is a venture capitalist who owns, operates, and/or controls Draper Associates, a venture capital firm operating out of Menlo Park, California within San Mateo County. Defendant Draper either personally, or through his firm Defendant Draper Associates, or both, had an ownership interest in Defendant DLS during the Tezos ICO, and continues to hold an interest.

26.     Defendant Johann Gevers is the President of the Foundation. Upon information and belief, Gevers is currently resident in Zug, Switzerland and is a citizen of South Africa and/or Switzerland.

27.     Defendant Diego Ponz is a director of the Foundation. Upon information and belief, Ponz is currently resident in Zug, Switzerland and is a citizen of unknown nationality.

28.     Defendant Guido Schmitz-Krummacher is (or was) a director of the Foundation. Upon information and belief, Schmitz-Krummacher is currently resident in Zug, Switzerland and is a citizen of unknown nationality. On December 12, 2017, Reuters reported that Schmitz-Krummacher resigned from his position as a director  and that "[u]nder the foundation's bylaws, Gevers gets to nominate Schmitz-Krummacher's replacement. If the third board member votes against the candidate, Gevers can cast an overriding vote."[15]

29.     Defendant Bitcoin Suisse AG is a crypto financial broker, asset manager and service provider based in Zug, Switzerland. Bitcoin Suisse AG was involved in the promotion and/or offer and sale of tokens in the Tezos ICO and is a controlling signatory to the funds collected as part of Tezos ICO.[16]

---

[15] Stecklow, Steve, *Tezos director resigns, sowing more uncertainty at crypto startup*, (Dec. 12, 2017) Reuters https://www.reuters.com/article/us-bitcoin-tezos-board/tezos-director-resigns-sowing-more-uncertainty-at-crypto-startup-idUSKBN1E62KN [as of Dec. 12, 2017].

[16] Neghaiwi, Brenna Hughes, et al., *No refund for Tezos contributors, cryptocurrency broker says*, (Nov. 15, 2017) Reuters <https://www.reuters.com/article/us-bitcoin-tezos-refunds/no-refund-for-tezos-contributors-cryptocurrency-broker-says-idUSKBN1DF2JQ> [as of Dec. 6, 2017].

See also, Allen, Matthew, *NO REFUND: 'Your money is safe,' Tezos broker tells investors* (Nov. 14, 2017) SWI <https://www.swissinfo.ch/eng/no-refund_-your-money-is-safe---tezos-broker-tells-investors/43674622> [as of Dec. 11, 2017] (stating: "Bitcoin Suisse has broken its silence to reveal that it has the responsibility of counter-signing every transaction that the foundation makes. In other words, the foundation cannot spend a cent unless Bitcoin Suisse agrees.")

CLASS ACTION COMPLAINT - 9
Case No.:

1001464 V1

30.     Defendant Niklas Nikolajsen is Bitcoin Suisse's Chief Executive Officer. Upon information and belief, Ponz is currently resident in Zug, Switzerland and is a citizen of unknown nationality.

31.     At all times mentioned herein, each of the defendants named herein, including DOES 1 through 100 were the co-conspirators, agents, representatives, alter egos, employers, and/or joint venturers of the other defendants, and, in doing the acts and things herein alleged, were acting within the course, scope, and authority of said agency, service, or employment with knowledge, permission, and consent of the other defendants and each of them.

32.     On information and belief, an unknown combination of Defendants Tezos Stiftung, DLS, Arthur Breitman, Kathleen Breitman, Johann Gevers, Diego Ponz, Guido Schmitz-Krummacher, Timothy Cook Draper and/or Draper Associates, Bitcoin Suisse AG, and Niklas Nikolajsen controls the Foundation's assets through either a "multisignature procedure" described on the Tezos.ch website that "requires access to a secure location for spending and several security checks"[17] or otherwise controls the assets through other means.

33.     Plaintiff alleges on information and belief that DOES 1-100, inclusive, were individuals, corporations, companies, partnerships, or other business entities. DOES 1-100 were co-conspirators with, or alter egos of, other Defendants in the violations alleged in this Complaint and performed acts or made statements in furtherance thereof. Plaintiffs are presently unaware of the true names and identities of DOES 1-100. Plaintiffs will amend this Complaint to allege the true names of the DOE defendants when they are able to ascertain them.

---

[17] *Diversifying the portfolio of the Tezos Foundation* <https://www.tezos.ch/diversifying-the-portfolio-of-the-tezos-foundation.html> [as of Dec. 1, 2017].

CLASS ACTION COMPLAINT - 10
Case No.:

1001464 V1

## V.     SUBSTANTIVE ALLEGATIONS

### A.     Background on Distributed Ledger or Blockchain-Enabled Means For Capital Raising (aka "ICOs")

34.     In a recent complaint and injunction against the founders of the "REcoin" ICO, as well as in an *Investor Bulletin*, the SEC aptly summarized the blockchain, ICOs, and token distribution process.

35.     Essentially, an ICO is a fundraising event in which an entity offers participants a unique "coin" or "token" in exchange for consideration (often in the form of virtual currency—most commonly Bitcoin and Ethereum—or fiat currency, such as U.S. Dollars).[18]

36.     A "virtual currency," such as Bitcoin and Ethereum, is a digital representation of value that can be digitally traded and functions as a medium of exchange, unit of account, or store of value. As of December 5, 2017, a Bitcoin could be purchased on an exchange for approximately $11,701 USD. Fractional Bitcoins can also be purchased. One unit of Ethereum ("ether") traded at $455.81 USD. These virtual currencies have seen tremendous appreciation: Bitcoin has appreciated 1446% in one year; Ether has appreciated 6,360.62% in one year.

37.     Rather than serving as a currency or unit of exchange, virtual "tokens" or "coins" sold in an ICO may represent other rights. In almost every ICO—including the Tezos ICO—investors purchase the tokens with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. Accordingly, in most cases—including this one— "tokens" or "coins" sold in an ICO will be securities and may not be lawfully sold without registration with the SEC or pursuant to an exemption from registration.[19]

38.     After an ICO, "tokens" or "coins" are issued on a "blockchain," which is an electronic distributed ledger or list of entries – much like a stock ledger – that is maintained by various participants in a network of computers located around the world, including in California and

---

18 See *S.E.C. v. REcoin Group Foundation, LLC, DRC World Inc. a/k/a Diamond Reserve Club, and Maksim Zaslavskiy* (E.D.N.Y Sept. 29, 2017, No. 1:17-cv-05725-RJD-RER).

19 *Investor Bulletin: Initial Coin Offerings* (July 25, 2017) U.S. Securities and Exchange Commission <https://www.sec.gov/oiea/investor-alerts-and-bulletins/ib_coinofferings> [as of Dec. 3, 2017].

CLASS ACTION COMPLAINT - 11
Case No.:

1001464 V1

1   throughout the United States. Blockchains use cryptography to process and verify transactions on the

2   ledger, providing comfort to users of the blockchain that entries are secure.

3           39.     The Bitcoin and Ethereum virtual currencies also use blockchains to create and track

4   transactions in bitcoin and ether, respectively.[20]

5           40.     Tezos tokens (also called tez, tezzies, or XTZ) were positioned by Tezos and its

6   promoters as being an improvement on Bitcoin or Ethereum. In an FAQ, Tezos stated that "Bitcoin,

7   Ethereum and Tezos are all decentralized ledgers powered by a blockchain. Bitcoin was the first

8   public blockchain and introduced the first truly decentralized form of electronic cash. Ethereum

9   followed suit by including smart-contracts in its platform, allowing a greater range of application to

10  be developed. Tezos takes this concept one step further by letting participants directly control the

11  rules of the network. It is designed to evolve, so that the next generation of ideas doesn't have to start

12  over as a new blockchain."[21]

13          41.     All transactions on a blockchain are recorded in the network in theoretically

14  unchangeable, digitally-recorded data packages called blocks. Each block contains a batch of records

15  of transactions, including a timestamp and a reference to the previous block, linking the blocks

16  together in a chain. The system relies on cryptographic techniques for secure recording of

17  transactions. A blockchain can be shared and accessed by anyone with appropriate permissions.[22]

18          42.     A "token" sold in an ICO may entitle its holders to certain rights related to a venture

19  underlying the ICO, such as rights to profits, shares of assets, rights to use certain services provided

20  by the issuer, and/or voting rights. In almost all cases, tokens may also be traded, thereby giving

21  investors a reasonable expectation of profits to be derived from the entrepreneurial or managerial

22  efforts of others (*i.e.*, the people operating the issuer whose efforts will impact the value of those

23  tokens on the secondary market). Tokens are frequently listed on online platforms, often called

24

25
_____

26      [20] *Id.*

27      [21] *FAQ* <https://www.tezos.com/faq> [as of Dec. 11, 2017].

        [22] *S.E.C. v. REcoin, supra* at n. 2.

28  CLASS ACTION COMPLAINT - 12
    Case No.:

virtual currency exchanges, where they are tradable for virtual (*e.g.,* Bitcoin or Ethereum) or fiat currencies (e.g., U.S. Dollars). Often, the "tokens" sold in an ICO are immediately tradable.[23]

43.     ICOs are typically announced and promoted through public online channels. Issuers usually release a "whitepaper" describing the project and the terms of the ICO. To participate, investors are generally required to transfer funds (often virtual currency) to the issuer's address, online wallet, or other account. After the completion of the ICO, the issuer will distribute its unique "tokens" to the participants' unique address on the blockchain.[24]

## B.     The Tezos ICO

44.     In August and September 2014, Defendant Arthur Breitman, under the pseudonym "L.M. Goodman," released a Position Paper and White Paper, touting Tezos as a "self-amending crypto-ledger." [25]

45.     Defendant Arthur Breitman also authored a "Tezos Business Plan" in early 2015, in which he listed himself as chief executive of Tezos. The plan projected that if the company survived 15 years, it would be worth between $2 billion and $20 billion, and the budget called for paying Breitman $212,180 in salary by year three.[26]

46.     In August 2015, Mr. Breitman created and registered Dynamic Ledger Solutions Inc. (DLS) in Delaware to develop Tezos. He listed himself as chief executive.[27] DLS has been principally operated out of the home of Defendants Arthur and Kathleen Breitman (at 111 North

---

[23] *Id.* at p. 7.

[24] *Id.* at p. 7-8.

[25] Goodman, L.M., Tezos*: A Self-Amending Crypto-Ledger Position Paper* (August 3, 2014) Tezos.com <https://www.tezos.com/static/papers/position_paper.pdf> [as of Dec. 2, 2017]; Goodman, L.M., *Tezos — a self-amending crypto-ledger White Paper* (Sept. 2, 2014) Tezos.com <https://www.tezos.com/static/papers/white_paper.pdf> [as of Dec. 1, 2017].

[26] Irrera, Anna, et al., *Special Report: Backroom battle imperils $230 million cryptocurrency venture*, (Oct. 18, 2017) Reuters <https://www.reuters.com/article/us-bitcoin-funding-tezos-specialreport/special-report-backroom-battle-imperils-230-million-cryptocurrency-venture-idUSKBN1CN35K> [as of Dec. 11, 2017].

[27] *Id.*

CLASS ACTION COMPLAINT - 13
Case No.:

Rengstorff Ave #78, Mountain View, CA, 94043), and continues to be owned and controlled by Defendants Arthur Breitman, Kathleen Breitman, Draper, and Draper Associates.

47.     In a pre-sale, ten early backers, including hedge funds and high net-worth individuals, provided the Breitmans with $612,000 in exchange for XTZ tokens equivalent to $893,200.77 in contributions (corresponding to a 31.48% discount).[28]

48.     Around May 2017, the Tezos project started running out of cash, and Defendant Kathleen Breitman reached out to Defendant Tim Draper, who invested $1.5 million into Tezos through his firm, Draper Associates. As a result of the investment, Draper Associates also took a minority stake in DLS, the company that controls the Tezos source code.[29]

49.     On or about April 24, 2017, the Foundation was formed as a Swiss nonprofit (Stiftungen) in Zug, Switzerland, purportedly to promote the development and use of the Tezos blockchain, and to be the recipient of ICO funds. Zug is a notorious haven for white collar miscreants. Marc Rich—the billionaire commodities trader who fled the United States in 1983 (and was later featured on the FBI's Ten Most Wanted List) after being indicted on tax evasion and racketeering charges—famously took refuge in Zug. As Time magazine wrote in a 2010 story: "Rich the outlaw removed himself to Zug to take advantage of the anonymity and light taxes it offered, and he made it the center of no-questions-asked trading. For anyone wanting to do deals, be they with oil-rich-if-bloodstained despots or run-of-the-mill democracies, this was the place. … In 2007 the European Commission in Brussels accused Swiss cantons like Zug of giving illegal state aid through giant corporate tax breaks. … Should taxes increase in Zug, the town has another draw: secrecy. Zug is tight-lipped, even for Switzerland. Tax records are confidential; … At Zug's documentation center, funded by local groups critical of Zug's tax system, archivists track Zug-registered companies by

---

[28] *Tezos Overview*, Tezos.com <https://www.tezos.com/static/papers/Tezos_Overview.pdf> [as of Dec. 2, 2017].

[29] Irrera, Anna, et al., *Special Report: Backroom battle imperils $230 million cryptocurrency venture*, (Oct. 18, 2017) Reuters <https://www.reuters.com/article/us-bitcoin-funding-tezos-specialreport/special-report-backroom-battle-imperils-230-million-cryptocurrency-venture-idUSKBN1CN35K> [as of Dec. 3, 2017].

CLASS ACTION COMPLAINT - 14
Case No.:

1001464 V1

scouring newspapers because many public records are closed. That privacy can make it difficult to figure out a company's real activities or even who owns it."[30]

50.     In a public statement, Defendants admitted that they chose to use a foundation in Zug, Switzerland (the Tezos Foundation) to conduct the ICO and collect investor funds because they perceived Switzerland's regulatory oversight to be weaker than that of the United States. Defendant Kathleen Breitman stated that they chose Switzerland because Switzerland has "a regulatory authority that had a sufficient amount of oversight but not like anything too crazy."[31]

51.     When questioned later about the regulatory framework for the implementation of the ICO and/or Tezos blockchain, Defendant Kathleen Breitman mentioned the countries of Gibraltar, Estonia and Singapore as additional examples of "accommodating usually small nations that are willing to work with you".[32] In other words, a flexible and less strict regulatory environment was a deciding factor in where and how Defendants chose to operate the Tezos ICO, and where they will choose to operate it in the future.

52.     A contract between DLS and the foundation was signed in June 2017. The agreement, which is not public, governs the sale of DLS and its intellectual property to the Foundation and states that the Swiss federal supervisory authority for foundations must approve the agreement. It also indicates the approval was required before the fundraiser took place. This approval has never taken place, and documents provided to participants in the fundraiser did not mention the required approval by the Swiss authority.[33] The façade of the Tezos Foundation being a completely separate and

---

[30] Walt, Vivienne. *Zug's Secrets: Switzerland's Corporate Hideaway* (Jan. 11, 2010) Time <http://content.time.com/time/magazine/article/0,9171,2040142,00.html> [as of Dec. 11, 2017].

[31] Irrera, Anna, et al., *Special Report: Backroom battle imperils $230 million cryptocurrency venture*, (Oct. 18, 2017) Reuters <https://www.reuters.com/article/us-bitcoin-funding-tezos-specialreport/special-report-backroom-battle-imperils-230-million-cryptocurrency-venture-idUSKBN1CN35K> [as of Dec. 3, 2017].

[32] Transcript, Flux Podcast 14: *Kathleen Breitman—Tezos Unleashed* (July 12, 2017) RRE Ventures Perspectives Blog <https://blog.rre.com/14-kathleen-breitman-tezos-unleashed-d0921294ec91> [as of Dec. 3, 2017].

[33] See e.g., Stecklow, Steve, et al., *Exclusive: Tezos founders push for legal bailout from Swiss foundation* (Dec. 1, 2017) <https://www.reuters.com/article/us-bitcoin-tezos-lawsuits-exclusive/exclusive-tezos-founders-push-for-legal-bailout-from-swiss-foundation-idUSKBN1DV4K0> [as of Dec. 11, 2017].

CLASS ACTION COMPLAINT - 15
Case No.:

distinct entity is further weakened by the fact that DLS and the Breitmans have now turned to the

Tezos Foundation's funds (*i.e.*, the ICO proceeds) to fund legal costs in connection with the illegal

offering.[34]

53.    On May 5, 2017, less than two months before the start of the Tezos ICO, Defendant

Timothy Draper promoted the Tezos ICO by announcing his investment in Tezos. He became,

according to Reuters, the "first prominent venture capitalist to openly embrace initial coin

offerings."[35]

54.    Draper promoted the ICO, stating that "The best thing I can do is lead by example,"

implying that he was standing in the same position as any other ICO participant. "Over time, I

actually feel that some of these tokens are going to improve the world, and I want to make sure those

tokens get promoted as well. I think Tezos is one of those tokens."[36] A July 7, 2017 story in the Wall

Street Journal noted that Tezos was "helped by having one prominent backer: Tim Draper, a founder

of the Silicon Valley venture-capital firm Draper Fisher Jurvetson. Mr. Draper's small undisclosed

personal investment in the firm, and his public pledge to buy into the initial coin offering,

significantly raised Tezos's profile."[37]

55.    As the SEC has explained, "[Individuals] who promote[] a virtual token or coin that is

a security . . . may also be liable for potential violations of the anti-fraud provisions of the federal

securities laws, for participating in an unregistered offer and sale of securities, and for acting as

unregistered brokers."[38]

---

[34] *Id.*

[35] Chavez-Dreyfuss, Gertrude, *Exclusive: Billionaire investor Draper to participate in blockchain token sale for first time* (May 5, 2017) Reuters <http://www.reuters.com/article/us-tezos-blockchain-draper/exclusive-billionaire-investor-draper-to-participate-in-blockchain-token-sale-for-first-time-idUSKBN181250> [as of Dec. 11, 2017].

[36] *Id.*

[37] Vigna, Paul, *Forget an IPO, Coin Offerings Are New Road to Startup Riches* (July 7, 2017) The Wall Street Jounal <https://www.wsj.com/articles/forget-an-ipo-coin-offerings-are-new-road-to-startup-riches-1499425200?mg=prod/accounts-wsj> [as of Dec. 11, 2017].

[38] SEC Public Statement, *Statement on Potentially Unlawful Promotion of Initial Coin Offerings and Other Investments by Celebrities and Others* (Nov. 1, 2017) <https://www.sec.gov/news/public-statement/statement-potentially-unlawful-promotion-icos> [as of Dec. 5, 2017].

1    56.    Investor interest and enthusiasm exploded after Draper's announcement.

2    57.    Prominently featured on the Tezos.com website are links to

3    https://crowdfund.tezos.com (which has since been taken down), the website through which investors

4    bought Tezos tokens during the ICO. ICO participants posting online on the day the ICO began were

5    commenting that https://crowdfund.tezos.com was redirecting them to tezos.ch – the website for the

6    Swiss-based Tezos Foundation – which they had never seen before.[39]

7    58.    The website also contained links to the Tezos Position Paper and White Paper,

8    explaining details about the Tezos project, including its purpose, goals, and technology, and the

9    "problems" with Bitcoin and Ethereum that it will solve.

10    59.    The Tezos website encouraged investors to "contribute" to the ICO throughout the

11    website and through links to marketing materials such as the *Tezos Overview* "static paper".[40]

12

13

14

15

16

17

18

19

20

21

22

23

24

25    [39] See e.g., *Re: Tezos discussion* (Jul. 1, 2017) Bitcoin Talk
<https://bitcointalk.org/index.php?topic=1775132.640> [as of Dec. 3, 2017] (commenter stating, "Is
26    tezos.ch the site? I went to https://crowdfund.tezos.com and it also redirect me to tezos.ch").

27    [40] *Tezos Overview*, Tezos.com <https://www.tezos.com/static/papers/Tezos_Overview.pdf> [as
of Dec. 2, 2017].

28    CLASS ACTION COMPLAINT - 17
Case No.:

60.     On the "Help" page of Tezos.com is a section entitled, "How exactly do I contribute to the fundraiser?" containing nine steps describing, in plain English, how to submit bitcoin or Ethereum to purchase Tezos tokens:



61.     Investors were also told they could submit fiat currency via Defendant Bitcoin Suisse AG.[41]

62.     On the same page, in another section entitled "Are there bonus periods?" Defendants describe a common ICO bonus scheme, where the sooner ICO investors made their purchases, the greater the bonus of additional tokens they stood to gain. Specifically, this section states that:

---

[41] *Help*, Tezos.com <https://www.tezos.com/help> [as of Dec. 3, 2017].

CLASS ACTION COMPLAINT - 18
Case No.:

1001464 V1

The bonus starts at 20%, meaning that a contribution of 1 BTC will yield a recommended allocation of 6,000 XTZ (a 1000 XTZ bonus). From 20% at the outset the bonuses will decrease progressively to 0% over four additional periods (15%, 10%, 5%, and 0%) lasting 400 Bitcoin blocks each. The average time between Bitcoin blocks is approximately 10 minutes, thus the fundraiser is expected to last about two weeks, and each bonus period of 400 blocks roughly two days and eighteen hours.[42]

63.     The Tezos ICO began on July 1, 2017 and lasted about two weeks.[43] The Tezos ICO was "uncapped" which meant that there was no limit on the amount of contributions that were accepted.[44]

64.     Defendants posted a document called "Contribution Terms" on the tezos.ch website, attempting to disclaim any obligations whatsoever to Plaintiff and the Class. This document stated that invested bitcoin and Ethereum constitute "a non-refundable donation" and not an "investment", that Defendants have no obligation to ever provide Plaintiff and the Class with Tezos tokens, and that the project "could be fully or partially abandoned" without recourse whatsoever. Indeed, Defendants have yet to provide any class member with their promised Tezzie tokens.

65.     In a public chat room run by Tezos, an automated bot would send a message each time someone in the chat room referred to an "investment" in the Tezos ICO, stating "Just a reminder, contributions to the Tezos' foundation's fundraiser are not 'investments.' The foundation will recommend allocation of tokens in the genesis block based on contributions."

66.     Investors recognized this for the transparent fiction it was:

---

[42] *Id.*

[43] *Help*, Tezos.com <https://www.tezos.com/help> [as of Dec. 3, 2017].

[44] *Tezos Overview*, at Section 3.5, "Early Backers" Tezos.com <https://www.tezos.com/static/papers/Tezos_Overview.pdf> [as of Dec. 2, 2017] (referencing Defendants' "uncapped fundraising structure").

CLASS ACTION COMPLAINT - 19
Case No.:

67.     As explained in detail below, Defendants' representations to the market and the Class made clear that contributors to the Tezos ICO were investors, not benefactors of a non-profit enterprise. Draper himself has admitted as much on multiple occasions. When, in connection with an October 22, 2017 story, a Reuters reporter asked Draper "how much he donated during the Tezos fundraiser, he replied via email, 'You mean how much I bought? A lot.'"[45]

68.     The idea of idea of labeling payments as "contributions" in an attempt to evade regulatory schemes is not a new one in Silicon Valley. When the ridesharing company, Lyft, first began offering its service, it attempted to characterize the payments made by riders to drivers as voluntary "donations" in an attempt to evade state and federal labor laws and municipal taxi regulations. Regulators and courts saw through the scheme.[46]

---

[45] Irrera, Anna, Steve Stecklow, and Brenna Hughes Neghaiwi, *Startup Tezos raised $232 million issuing a new digital currency — now key players are fighting* (Oct. 19, 2017) Business Insider <http://www.businessinsider.com/r-special-report-backroom-battle-imperils-230-million-cryptocurrency-venture-2017-10?r=UK&IR=T> [as of Dec. 11, 2017].

[46] *See, e.g.*, *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1080 (N.D. Cal. 2015); *Greater Houston Transp. Co. v. Uber Techs., Inc.*, No. CIV.A. 4:14-0941, 2015 WL 1034254, at *17 (S.D. Tex. Mar. 10, 2015);

CLASS ACTION COMPLAINT - 20
Case No.:

1001464 V1

## C.        The Tezos Tokens Are Securities

69.        The Tezos tokens are securities under both California and federal law. Under California Corporations Code § 25019, a security includes "an investment contract." California courts have applied the federal test described in *SEC v. W.f. Howey Co.* 328 U.S. 293 (1946) in determining whether a transaction is an investment contract.

70.        An investment contract is an investment of money in a common enterprise with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.[47] This definition embodies a "flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits."[48] The test "permits the fulfillment of the statutory purpose of compelling full and fair disclosure relative to the issuance of 'the many types of instruments that in our commercial world fall within the ordinary concept of a security.'" *Id.* In analyzing whether something is a security, "form should be disregarded for substance,"[49] "and the emphasis should be on economic realities underlying a transaction, and not on the name appended thereto."[50]

71.        The SEC concluded, in a Report of Investigation, that virtual coins similar to those offered in the Tezos ICO—sold by an organization called the "DAO"—were "securities and therefore subject to the federal securities laws." As the SEC made clear, "[I]ssuers of distributed

---

[47] See *SEC v. W.J. Howey Co.* (1946) 328 U.S. 293, 298-299, 301; see also *SEC v. Edwards* (2004) 540 U.S. 389, 393; *United Housing Found., Inc. v. Forman* (1975) 421 U.S. 837, 852-53 (The "touchstone" of an investment contract "is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.").

[48] *Howey*, 328 U.S. at 299 (emphasis added).

[49] *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967).

[50] *United Housing Found*, 421 U.S. at 849.

CLASS ACTION COMPLAINT - 21
Case No.:

1001464 V1

1    ledger or blockchain technology-based securities must register offers and sales of such securities

2    unless a valid exemption applies."[51]

                  **a.**        **Investors in the Tezos ICO Invested Money**

3

4         72.      Investors in the Tezos ICO used Bitcoin, Ethereum, and cash to make their

5    investments, and Tezos Tokens were received in exchange for this consideration. Such investment is

6    the type of contribution of value that can create an investment contract under California Corporations

7    Code § 25019.

8         73.      Defendant Kathleen Breitman has represented that Defendants were "selling" the

9    Tezos tokens by stating: "we're *selling*, rather the Foundation is recommending an allocation of

10    tokens to the genesis block based on donations to a Swiss non-profit. And there's a suggested

11    allocation amount. So one bitcoin for 5000 tokens. And were going to *sell* them over the course of,

12    rather have them up for donation over the course of two weeks."[52]

13         74.      Defendant Kathleen Breitman recognized that many unaccredited investors don't take

14    the same precautions taken by accredited investors when making investments when she stated:

15                **An ICO, which sounds like an IPO,** sort of **leads into this other**

16                **attitude where people act as though there is some sort of other**
                 **obligation that doesn't necessarily exist with these structures.** And

17                I think that's very poisonous because investors, **accredited investors**
                 **act a certain way, and they take certain precautions. And that's**

18                **not something everyone has learned.** [53]

19         **b.**        **Investors Had a Reasonable Expectation of Profits**

20         75.      It is widely understood that investors in the Tezos ICO participated with the

21    reasonable expectation that they would make a profit.

22

---

23        [51] Press Release, SEC, *SEC Issues Investigative Report Concluding DAO Tokens, a Digital Asset,*

24    *Were Securities* (Jul. 25, 2017) https://www.sec.gov/news/press-release/2017-131 [as of Dec. 5, 2017].

25        [52] Fintech Podcast, Episode 138: Interview with Kathleen Breitman, CEO of Tezos, (June 16, 2017), at 13:40 https://www.youtube.com/watch?v=cDIgGYl5krA&feature=youtu.be

26

27        [53] *E759: Tezos Kathleen Breitman raises $232m top ICO for new self-governing smart contract blockchain* (Sept 1, 2017) <https://www.youtube.com/watch?v=rdRSUJkvmxM> (at 37:40) [as of Dec. 4, 2017] (emphasis added).

28    CLASS ACTION COMPLAINT - 22
     Case No.:

76.     Tezos token holders stood to share in potential profits from the successful launch of the Tezos token. Thus, a reasonable investor would have been motivated, at least in part, by the prospect of profits on their investment in the Tezos project.

77.     Defendant Draper told Reuters that cryptocurrencies are commodities like pork bellies, and characterized acquiring Tezzies as a purchase rather than a donation.[54]

78.     In addition, on July 26, 2017, Draper published an open letter to the SEC on Facebook,[55] in which he acknowledged the SEC's statutory authority to regulate ICOs (i.e., implicitly acknowledging that tokens are securities). Draper wrote "I agree that some (light) regulation might be in order with regard to ICOs. But in the spirit of clarity, and encouraging innovation with this new vehicle that has so much potential, I recommend the following: 1. If the purpose of a token is for investment, it must register with the SEC. … 3. If the purpose of a token is to raise money for a company, and the money is used to support the company, it must register with the SEC." Draper went on to suggest that "Any tokens issued before October 30, 2017 should be grandfathered in," betraying a recognition that, even under the test he proposed, the Tezos tokens should have been registered.

79.     In reference to investors who are seeking profit, Defendant Kathleen Breitman has stated: "ultimately we're appealing to people's rational self-interest."[56]

80.     Additionally, Section 3.1.2 of the Tezos White Paper, entitled "Mining and signing rewards", describes the financial incentive (described as a "pecuniary reward") provided to miners to validate blocks and maintain and operate the Tezos network, and states that "[m]ining and signing both offer a small reward."[57]

---

[54] Irrera, Anna, *Backroom battle imperils $230 million cryptocurrency venture* (Oct. 18, 2017) Reuters < https://www.reuters.com/investigates/special-report/bitcoin-funding-tezos/> [as of Dec. 3, 2017].

[55] https://www.facebook.com/tim.draper/posts/10155685679894235?pnref=story

[56] Transcript, Flux Podcast 14: *Kathleen Breitman—Tezos Unleashed* (July 12, 2017) RRE Ventures Perspectives Blog <https://blog.rre.com/14-kathleen-breitman-tezos-unleashed-d0921294ec91> [as of Dec. 3, 2017].

[57] Goodman, L.M., *Tezos — a self-amending crypto-ledger White Paper* (Sept. 2, 2014) Tezos.com <https://www.tezos.com/static/papers/white_paper.pdf> [as of Dec. 1, 2017].

CLASS ACTION COMPLAINT - 23
Case No.:

1001464 V1

81.     In Section 3.2 of the Tezos White Paper, Defendants go on to describe Tezo's "proof-of-stake" concept, which gives token-holders a dividend-like reward for mining tokens and maintaining the Tezos blockchain:

> We conjecture that the security of any decentralised currency requires to **incentivize** the participants with a **pecuniary** reward (we are in the process of finalizing the rewards schedule at the moment). As explained in the position paper, relying on transaction costs alone suffers from a tragedy of the commons. In Tezos, we rely on the combination of a bond and a reward.
>
> Bonds are one year (bonds will now only last a single cycle, given the high opportunity cost and little benefit to security of extending the bonding period past one cycle) security deposits purchased by miners (endorsers will also be required to purchase bonds). In the event of a double signing, these bonds are forfeited.
>
> After a year (cycle), the miners (and endorsers) receive a reward along with their bond to compensate for their opportunity cost. The security is primarily being provided by the value of the bond and the reward need only be a small percentage of that value.[58]

82.     The Tezos Foundation's website acknowledges that the depression of prices "is *obviously not in the best interest of contributors* or the foundation".[59] This is because investors are clearly interested in seeing a return on their investment.

83.     Other factors that support the conclusion that Tezos investors invested their money for Tezos tokens with the reasonable expectation of profits include, *inter alia*, the following:

    a. The statement on February 17, 2017 by Defendant Kathleen Breitman in reference to the Polychain VC investment and the ICO process that "[w]e created a product that was purchased by VC **investors** without the traditional equity investment model because of **the anticipated appreciation of our token**." (emphasis added);[60]

---

[58] *Id.*

[59] *Diversifying the portfolio of the Tezos Foundation* <https://www.tezos.ch/diversifying-the-portfolio-of-the-tezos-foundation.html> [as of Dec. 1, 2017].

[60] Campbell, Rebecca, *Tezos Receives Funding for Smart Contact System from Polychain Capital's Digital Currency Fund* (Feb. 17, 2017) Nasdaq <http://www.nasdaq.com/article/tezos-receives-investment-in-smart-contact-system-from-polychain-capitals-digital-currency-fund-cm749875> [as of Dec. 3, 2017].

CLASS ACTION COMPLAINT - 24
Case No.:
1001464 V1

b. Defendant Draper, a billionaire venture capitalist, has stated: "We invested for ownership in [DLS]" and "participated in the Pre-sale," going on to say "All tokens we hope to receive that we didn't buy in the Pre-sale (alongside with all the other **investors** who participated) will vest over time with the founders' tokens." (emphasis added). In the same statement, Draper said: "If [Defendants Arthur Breitman and Kathleen Breitman] are successful [in developing the Tezos tokens], they might just transform society, and we will all be better off as a result, **and then, maybe 5 or ten years down the road, my investors and I might get rich**." (emphasis added);[61]

c. The statement on the Tezos.com *Frequently Asked Questions* ("FAQ") webpage that "**token holders can receive rewards** for participating in the proof-of-stake consensus mechanism" (emphasis added);[62]

d. The statement on the *Tezos Overview* document that developers will be **"compensate[d]" with Tezos tokens** that "have immediate value rather than forcing them to seek corporate sponsorships, foundation salaries, or work for Internet fame alone" (emphasis added);[63]

e. The statement on the *Tezos Overview* document that long-term governance goals include "favoring decisions that tend toward **increasing the value of the tokens** (emphasis added);[64]

f. The language used by Defendants to describe the Tezos tokens: According to Defendants, tokens are "minted", experience "inflation", and the receipt of

---

[61] *Tim Draper: There Was Nothing Secretive About Our Purchase of Tezos* (Oct. 23, 2017) Bitcoin Isle <https://www.bitcoinisle.com/2017/10/23/tim-draper-there-was-nothing-secretive-about-our-purchase-of-tezos/> [as of Dec. 3, 2017].

[62] *FAQ* <https://www.tezos.com/faq> [as of Dec. 2, 2017].

[63] *Tezos Overview*, at 2.1, "The Principles of the Tezos Blockchain": *Governance* <https://www.tezos.com/static/papers/Tezos_Overview.pdf> [as of Dec. 2, 2017].

[64] *Id.* at 6.1, "Long-Term Goals": *Community Goals.*

CLASS ACTION COMPLAINT - 25
Case No.:

1001464 V1

more tokens are described as "profits".[65] The Tezos position paper even

describes Tezos miners and/or token holders as "stakeholders";[66]

g.   The question posed in the Tezos position paper, while analogizing Bitcoin

mining with Tezos mining: "why would a dominant miner **destroy the value**

**of their investments by compromising the currency**?"[67] and

h.   Statements in the Tezos position paper suggesting that stakeholders (i.e.,

Tezos miners and/or token holders) will be incentivized to, and may actually

take actions to raise the value of Tezos tokens, and prevent the dilution of the

token's value.[68]

84.      Public statements by investors themselves also suggest that many investors in Tezos consider themselves investors, and not simply "contributors" or "donors", and that they expect a return on their investments.

85.      For instance, one investor, Kevin Zhou, co-founder of the cryptocurrency trading fund Galois Capital, invested about five bitcoins in Tezos, and said: "For me and for a lot of people this is an investment. We are looking for a return."[69]

86.    Similarly, Plaintiff and the Class view their financial contributions as investments that were made dependent upon Defendants' representations and efforts.

---

[65] See *Id*. at 2.3, "The Principles Of The Tezos Blockchain": *Proof of Stake*.

[66] See e.g., Goodman, L.M., Tezos*: A Self-Amending Crypto-Ledger Position Paper*, at p. 13 (August 3, 2014) Tezos.com <https://www.tezos.com/static/papers/position_paper.pdf> [as of Dec. 2, 2017] (describing a former stakeholder as one who has "since cashed out").

[67] *Id*. at p. 6.

[68] *Id*. at p. 16.

[69] Irrera, Anna, *Backroom battle imperils $230 million cryptocurrency venture* (Oct. 18, 2017) Reuters < https://www.reuters.com/investigates/special-report/bitcoin-funding-tezos/> [as of Dec. 3, 2017].

87.     Moreover, members of the online crypto-investment sphere regularly keep track of the return on investment (ROI) they could potentially gain from investing in an ICO through websites such as icostats.com.



| | NAME | ▼ CHANGE (%) | ICO DATE | ICO PRICE ❓ | CURR PRICE |
|---|---|---|---|---|---|
| | NXT | +4012388% | 09/27/13 | $ 0.000 | $ 0.674 |
| | IOTA | +989317% | 11/24/15 | $ 0.000 | $ 4.299 |
| | Ethereum Buy Instantly | +152844% | 07/21/14 | $ 0.311 | $ 476.299 |
| | Stratis Buy Instantly | +146749% | 06/19/16 | $ 0.007 | $ 10.680 |
| | Neo Buy Instantly | +110122% | 09/30/15 | $ 0.032 | $ 35.051 |
| | Spectrecoin | +40413% | 11/19/16 | $ 0.001 | $ 0.329 |
| | Ark | +36618% | 11/06/16 | $ 0.010 | $ 3.655 |
| | Lisk Buy Instantly | +10910% | 02/21/16 | $ 0.076 | $ 8.419 |
| | Populous | +9841% | 06/23/17 | $ 0.278 | $ 27.615 |
| | Waves Buy Instantly | +5829% | 04/11/16 | $ 0.188 | $ 11.168 |
| | Augur | +4948% | 07/31/15 | $ 0.602 | $ 30.405 |

88. For instance, according to the site, Ethereum's ICO price was $0.311, and it now trades at $476.29 as of Dec. 11, 2017.[70] Defendants have consistently represented Tezos as being a technologically improved version of the Bitcoin and Ethereum blockchains.[71] Defendants' statements fueled speculation that Tezos was the "next Ethereum",[72] driving investors to seek similar (or greater returns).

_____

[70] *ROI Since ICO* (Dec. 11, 2017) ICO Stats <https://icostats.com/roi-since-ico> [as of Dec. 11, 2017].

[71] See e.g., *Tezos Overview*, "Executive Summary" <https://www.tezos.com/static/papers/Tezos_Overview.pdf> [as of Dec. 3, 2017] (stating, "The Tezos blockchain will underpin secure, decentralized applications and smart contracts while avoiding some of the political and technological problems which earlier efforts such as Bitcoin and Ethereum have faced.");

[72] See e.g., Dibb, Matt, *Tezos ICO: Is this really the next Ethereum?* (July 4, 2017) Medium <https://medium.com/@picolo/tezos-ico-is-this-really-the-next-ethereum-cea99fcc3a1c> [as of Dec. 3, 2017].

CLASS ACTION COMPLAINT - 27
Case No.:

c.     **Investors Expect Those Profits to Be Derived from the Managerial Efforts of Others**

89.     Investors' profits were to be derived from the managerial efforts of others—specifically, Tezos and its co-founders, and the Tezos development team. The Tezos investors relied on the managerial and entrepreneurial efforts of Tezos and its co-founders, and the Tezos development team, to manage and develop the Tezos project.

90.     Defendants, especially the Breitmans, held themselves out to investors as experts in Ethereum, the blockchain protocol on which Tezos operated (or will operate), and told investors on multiple occasions that they were in the process of hiring additional developers.

91.     Investors in Tezos reasonably expected the Tezos co-founders and the Tezos development team to provide significant managerial efforts after Tezos's launch.

92.     The expertise of Defendants was critical in monitoring the operation of Tezos, promoting Tezos, and safeguarding investor funds, etc. Investors had little choice but to rely on their expertise. The Tezos blockchain protocol and governing structure were predetermined long before the ICO was launched.

93.     Defendant Arthur Breitman has even recently mocked investors for not being as knowledgeable as he is regarding the development of Tezos. After a developer challenged him because of the lack of news and delay in the development of Tezos, stating "Maybe the issue is you first of all? Maybe the issue is your absolute incompetence in terms of writing a code? Eitehr you lied [to] us about three years of development prior to [the] ICO . . . [or] you are [an] incompetent developer and your entire team [is] too." Breitman responded by stating:

> "Maybe the issue is your trolling. **Writing "a" code? You have zero understanding of what such a project entails**."[73]

94.     Defendant Arthur Breitman has also put forth public statements admitting that the progress of the Tezos project is dependant on his own personal efforts by stating, for instance:

---

[73] 2017-12-01 dev update (Dec. 2, 2017) Reddit <https://www.reddit.com/r/tezos/comments/7gzmll/20171201_dev_update/?st=jashudk1&sh=1524a8e5> [as of Dec. 4, 2017].

Some development has continued and we have **personally been working** to create strong relationships with successful entrepreneurs looking to build with Tezos.[74]

95.     And Defendants have represented that they did in fact, and continue to, actively oversee the Tezos project.

**D.     Tezos Defendants Were Required to Qualify Offers and Sales of Securities Unless a Valid Exemption Applies**

96.     Defendants were issuers of or participants in issuances of securities under the meaning of Cal. Corp Code § 25010. The definition of "issuer" is broadly defined to include "any person who issues or proposes to issue any security" (Cal. Corp Code § 25010), and "person" includes "an individual, a corporation, a partnership, a limited liability company, a joint venture, an association, a joint stock company, a trust, an unincorporated organization, a government, or a political subdivision of a government." Cal. Corp Code § 25013.

97.     Moreover, Defendants "offered and sold" the securities "within the state" of California within the meaning of Cal. Corp Code § 25008.

98.     During the Offering Period, Defendants offered and sold Tezos Tokens in exchange for Ethereum, Bitcoin, and fiat currency through the Tezos Website, which was publicly-accessible, including to individuals in California and throughout the United States. Because Tezos Tokens were securities, Defendants were required to qualify them pursuant to the California Corporations Code, unless a valid exemption from such registration applied.

99.     Those who participate in an unqualified offer and sale of securities not subject to a valid exemption are liable for violating Section 25110 of the California Corporations Code.

---

[74] Breitman,  Arthur, *The Path Forward: A letter from Arthur & Kathleen Breitman to the Tezos community* (Oct. 18, 2017) <https://medium.com/@arthurb/the-path-forward-eb2e6f63be67> [as of Dec. 11, 2017].

CLASS ACTION COMPLAINT - 29
Case No.:

1001464 V1

1

### E.    Infighting, Governance Problems, and Delays Emerge

2        100.    The Breitman Defendants have recently been engaged in a very public ongoing power

3   struggle with Gevers regarding control over Defendant Tezos Foundation, and the proceeds from the

4   ICO.

5        101.    Between August and October 2017, Defendants provided investors with few updates

6   on the Tezos project.

7        102.    On or around October 18, 2017, Defendant Arthur Breitman published a blog post on

8   medium.com stating: "In early September we became aware that the president of the Tezos

9   Foundation, Johann Gevers, engaged in an attempt at self-dealing, misrepresenting to the council the

10  value of a bonus he attempted to grant himself."[75]

11       103.    The same day, an attorney for the Breitmans sent a 46-page letter to the two other

12  members of the foundation's three-person board (currently, and likely also at the time, Defendants

13  Diego Ponz and  Guido Schmitz-Krummacher), calling for Gevers' prompt removal and seeking to

14  give the couple a "substantial role" in a new structure that would limit the foundation's

15  responsibilities. The document accuses Gevers of "self-dealing, self-promotion and conflicts of

16  interest." According to Gevers, the Breitmans later suggested via email that he step aside for a month

17  while they investigate.[76]

18       104.    Gevers responded that he is not stepping down and that the Breitmans have been

19  trying to control the foundation as if it were their own private entity by bypassing the foundation's

20  legal structure and interfering with management and operations. Their interference has resulted in

21  costly delays in developing and launching the Tezos network and new currency (which Tezos

22  promised to have launched by now), according to Gevers.[77] Gevers accused the Breitmans of

23

24  [75] Breitman, Arthur, *The Path Forward: A letter from Arthur & Kathleen Breitman to the Tezos community* (Oct. 18, 2017) <https://medium.com/@arthurb/the-path-forward-eb2e6f63be67> [as of
25  Dec. 11, 2017].

26  [76] Irrera, Anna, *Backroom battle imperils $230 million cryptocurrency venture* (Oct. 18, 2017) Reuters < https://www.reuters.com/investigates/special-report/bitcoin-funding-tezos/> [as of Dec. 3,
27  2017].

    [77] *Id.*

28  CLASS ACTION COMPLAINT - 30
    Case No.:

"character assassination," and of making "misleading statements and outright lies," and accused

Defendants Ponz and Schmitz-Krummacher of an "illegal coup."

**F.      Defendants Are Selling, Converting and Dissipating the Consideration Collected From the Class**

105.      The Tezos Foundation has been liquidating the Bitcoin and Ethereum invested by

investors since July 17, 2017, shortly after the ICO ended.[78] On July 18, 2017, Defendants posted the

following on the Tezos.ch website:

> The Tezos Foundation currently holds over $220M worth of bitcoins and ethers.
> To best serve the interests of the Tezos community, we intend to gradually
> diversify our position by slowly selling some (but not all) of these holdings over
> the coming months and purchasing a conservative portfolio of cash, stocks, bonds,
> and precious metals. This will ensure that our organization is resilient in good
> times, and bad times.[79]

106.      Defendants' first conversion of the ICO proceeds was completed on July 17, 2017

when they "sold 1,587 ether at a price of $163.82, netting about 250,000 CHF for the Tezos

Foundation."[80]

107.      Moreover, in an August 2017 update, Defendants confirmed that they were still

converting these assets by stating that they "have been slowly converting these assets into cash at a

pace of roughly CHF 500,000 per day."[81]

108.      Defendants also admitted that they were holding Bitcoin at the time of a so-called

"fork," which created a new form of cryptocurrency called Bitcoin Cash for every holder of Bitcoin.

As a result of the fork, Defendants admitted that "for every Bitcoin held by the Tezos Foundation,

the Foundation now additionally holds a new 'BCH' token" and plans to gradually convert and sell

these assets as well.[82]

---

[78] *Diversifying the portfolio of the Tezos Foundation* <https://www.tezos.ch/diversifying-the-portfolio-of-the-tezos-foundation.html> [as of Dec. 1, 2017].

[79] *Id.*

[80] *Id.*

[81] *August Update.* <https://www.tezos.ch/august-update.html#august-update> [as of Dec. 1, 2017].

[82] *Id.*

CLASS ACTION COMPLAINT - 31
Case No.:

1001464 V1

109.     At the same time, Defendants Niklas Nikolajsen and Bitcoin Suisse AG have now publicly revealed themselves to be controlling counter-signatories to the ICO proceeds.[83] While issuing a public statement claiming that their control over the funds was put into place "to protect contributors" Bitcoin Suisse AG also claimed that investors will not receive "refunds", stating:

> "The terms for contribution in the Tezos Crowd Contribution to which each contributor agreed in order to participate […] specified that refunds post-contribution and after the close of crowd contribution would not be possible, due to both regulatory reasons as well as practical reasons."[84]

110.     On August 10, 2017, the Tezos Foundation also announced its commitment to use $50 million in ICO proceeds "through venture capital partners to be announced" and "a direct venture arm" for "companies looking to build on the Tezos platform."[85]

111.     Moreover, Defendant Arthur Breitman has stated via a post on reddit.com that the Foundation has given funds to DLS, including a $60,000 payment "a few months ago."[86]

112.     In addition, there are reports that the Foundation just fired its auditors. A document filed with the Swiss Commercial Register indicated that the auditing firm Lufida Revision AG had been terminated.[87] As of December 11th, 2017, no explanation for the firm's termination has been provided by Defendants, despite their promise to provide an audit to the public in November 2017.

113.     Moreover, as mentioned, the Breitmans are also seeking to spend the Foundation's assets on their legal bills.[88]

---

[83] Allen, Matthew, *NO REFUND: 'Your money is safe,' Tezos broker tells investors* (Nov. 14, 2017) SWI <https://www.swissinfo.ch/eng/no-refund_-your-money-is-safe---tezos-broker-tells-investors/43674622> [as of Dec. 11, 2017].

[84] *Id.*

[85] *What is the Tezos Foundation doing with their Funds?* (Aug. 14, 2017) tezos.community <https://forums.tezos.community/t/what-is-the-tezos-foundation-doing-with-their-funds/359> [as of Dec. 3, 2017].

[86] *Reasons why Gevers should resign* (Dec. 2, 2017) Reddit <https://www.reddit.com/r/tezos/comments/7h13bk/reasons_why_gevers_should_resign/?st=jars8mcu&sh=11f66b73> [as of Dec. 3, 2017].

[87] https://www.shab.ch/shabforms/servlet/Search?EID=7&DOCID=3904447

[88] Stecklow, Steve, et al., *Exclusive: Tezos founders push for legal bailout from Swiss foundation* (Dec. 1, 2017) <https://www.reuters.com/article/us-bitcoin-tezos-lawsuits-exclusive/exclusive-tezos-founders-push-for-legal-bailout-from-swiss-foundation-idUSKBN1DV4K0> [as of Dec. 11, 2017].

114.     On information and belief, the ongoing conversion, sale, and possible dissipation of the ICO proceeds are controlled by some combination of Defendants Tezos Stiftung, DLS, Arthur Breitman, Kathleen Breitman, Johann Gevers, Diego Ponz, Guido Schmitz-Krummacher, Timothy Cook Draper and/or Draper Associates, Bitcoin Suisse AG, and Niklas Nikolajsen, who control the Foundation's assets through a "multisignature procedure" described as follows on the Tezos.ch website:

> The multisignature procedure we use requires access to a secure location for spending and several security checks which make it a non trivial affair.[89]

115.     The facts above demonstrate that an ongoing combination of the conversion of ICO proceeds, accusations of self-dealing, a lack of transparency, a lack of regulatory oversight, a refusal to acknowledge investor concerns or claims, and unreported payments, bonuses, and fees all threaten the proceeds collected from the Class. Without immediate judicial intervention, Defendants will have managed to completely consume the illegally-obtained ICO proceeds, leaving Plaintiff and the Class with no remedy.

## VI.     CLASS ALLEGATIONS

116.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 and seek certification of the following Class: all persons who purchased Tezos tokens, XTZ, and/or Tezzies during the ICO conducted by Defendants in July 2017.

117.     Excluded from the Class are Defendants, their officers and directors, and members of their immediate families or their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

118.     Plaintiff reserves the right to amend the Class definition if further investigation and/or discovery indicate that the Class definition should be narrowed, expanded, or otherwise modified.

119.     The members of the Class are so numerous that joinder of all members is impracticable. The precise number of Class members is to Plaintiff at this time but it is believed to be

---

[89] *Diversifying the portfolio of the Tezos Foundation* <https://www.tezos.ch/diversifying-the-portfolio-of-the-tezos-foundation.html> [as of Dec. 1, 2017].

CLASS ACTION COMPLAINT - 33
Case No.:

1001464 V1

in the tens of thousands. Members of the Class may be identified by publicly-accessible blockchain ledger information and records maintained by Defendants or its agents. They may be notified of the pendency of this action by electronic mail using a form of notice customarily used in securities class actions.

120.    Plaintiff's claims are typical of the claims of the Class members as all Class members are similarly affected by the Defendants' respective wrongful conduct in violation of the laws complained of herein. Plaintiff additionally does not have any interest that is in conflict with the interests of the members of the Class.

121.    Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class actions and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

122.    Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a)   Whether the Tezos tokens are "securities" within the meaning of the California Corporate Securities Law of 1968;

b)   Whether Defendants offered or sold Tezos securities through the ICO;

c)   Whether Defendants were required to qualify Tezos tokens pursuant to the California Corporate Securities Law of 1968 for the Tezos ICO;

d)   Whether the Tezos ICO violated the qualification provisions of the California Corporate Securities Law of 1968;

e)   Whether Defendants are "issuers" in the Tezos securities offering;

f)   Whether Defendants controlled or were controlled by persons liable under Cal. Corp. Code § 25503, or materially assisted in a violation of Cal. Corp. Code § 25110 pursuant to Cal. Corp. Code § 25504.1;

g)   Whether the conduct of Defendants violated the Unfair Competition Law;

h)   The type and measure of damages suffered by Plaintiff and the Class; and

CLASS ACTION COMPLAINT - 34
Case No.:

1001464 V1

i)  Whether Plaintiff and the Class are entitled to recover the consideration paid for the Tezos tokens, with interest thereon at the legal rate, or the equivalent in monetary damages plus interest at the legal rate from the date of purchase, and if so, the proper calculation and amount of those damages.

123.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST COUNT

## VIOLATION OF CAL. CORPORATIONS CODE § 25110

### (Against All Defendants)

124.  Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, except any allegation of fraud, recklessness or intentional misconduct.

125.  The Tezos tokens Plaintiff purchased from Defendants were securities, as defined by California Corporations Code § 25019, because they are "investment contract[s]".

126.  Defendants offered and sold, or otherwise participated in the offer and sale of over 600 million unregistered, non-exempt securities (i.e., the Tezos tokens) to thousands of individuals, including Plaintiffs and investors, in violation of California state law.

127.  Defendants, and each of them, "offered and sold" the securities "within the state" of California within the meaning of Cal. Corp Code § 25008.

128.  The sales constituted issuer transactions in that it was part of an initial offering of Tezos tokens and the issuers directly benefitted from Plaintiffs' investments and received a portion of the investments as the issuer of the security.

129.  At the time of the sale of the Tezos tokens, and to the date of this Complaint, the sale was subject to qualification.

CLASS ACTION COMPLAINT - 35
Case No.:

1001464 V1

130.    At the time of the sale of the Tezos tokens, and to the date of this Complaint, the sale had not been qualified under Cal. Corp Code §§ 25111, 25112 or 25113, no order under Section 25140 or subdivision (a) of Section 25143 was in effect with respect to such qualification, and the securities or transactions were not exempted or subject to qualification under Cal. Corp Code §§ 25100-25105.

131.    As a result of the above-described acts, Defendants are liable to Plaintiffs, who are entitled to and hereby do, rescind the above-described purchases pursuant to § Corp. Code § 25503, or alternatively, § 25501.5, and who each may sue to recover the consideration paid for the Tezos tokens, with interest thereon at the legal rate.

132.    Pursuant to Cal. Corp Code § 25503, if Defendants are incapable of returning the consideration to Plaintiffs, then Plaintiffs are entitled to recover from Defendants damages equal to the value of the consideration plus interest at the legal rate from the date of purchase.

133.    Defendants and each of them, directly and indirectly, controlled persons and entities (including other Defendants) liable under § 25503 as set forth in this Complaint and are liable jointly and severally with and to the same extent as such persons under their control pursuant to Cal. Corp Code § 25504.

## SECOND COUNT

## UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

### (Against all Defendants)

134.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

135.    Defendants engaged in unlawful business practices in violation of the Unfair Competition Law in each of the following respects:

   a)    Defendants' failure to register Tezos tokens as a security with the SEC prior to offering them to the public in the Tezos ICO violates the Corporate Securities Law of 1968, Cal. Corp. Code § 25110 and Sections 5(a) and 5(c) of the Securities Act of 1933 (15 U.S.C. §§ 77e(a) and 77e(c)), and consequently, constitutes an unlawful

1    business act or practice within the meaning of Business and Professions Code section

2        17200 *et seq.*

3      b)   Defendants engaged in unfair business practices in violation of the Unfair

4           Competition Law because their business practices were immoral, unethical,

5           oppressive, and unscrupulous.

6      c)   Defendants' business practices violate public policy because they directly implicate

7           the public interest by impacting matters of great importance to the public. For

8           instance, the qualification requirements in securities laws like California's Corporate

9           Securities Law of 1968 were enacted to protect the public from harm in transactions

10          involving securities, like the investments at issue here.

11     d)   The harm to Plaintiff and members of the Class outweighs the utility of Defendants'

12          policy/practice and, consequently, Defendants' practice constitutes an unfair business

13          act of practice within the meaning of Business and Professions Code section 17200 *et*

14          *seq.*

15     e)   Defendants' conduct violates the policy or spirit of the securities laws, including but

16          not limited to those laws referenced in subparagraph (a) above or otherwise

17          significantly threatens or harms competition.

18    136.   As a result of the aforementioned acts, Plaintiff and class members have lost money

19  or property and suffered injury in fact. Defendants received and continue to hold money and property

20  belonging to Plaintiff and class members.

21    137.   Plaintiff and class members have no adequate remedy at law for the injuries which

22  they have suffered and will continue to suffer in the future.

23    138.   Plaintiffs are entitled to restitution in the amount of their Tezos investment, because

24  that investment was obtained through unlawful and unfair business practices.

25                          **PRAYER FOR RELIEF**

26

27    WHEREFORE, Plaintiff and the Class pray for relief and judgment as follows:

28  CLASS ACTION COMPLAINT - 37
    Case No.:

    1001464 V1

As immediate relief, a temporary restraining order and a preliminary injunction:

    (a) Freezing Defendants' assets collected as, or derived from, proceeds of the ICO; and

    (b) Enjoining Defendants from making further transfers, dissipations or conversions of the investments raised during the Tezos ICO, or using such funds in any further purchases or transactions.

And for a Final Judgment:

    (a) Certifying the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel and Plaintiff as class representative;

    (b) Imposing a constructive trust over the funds and assets rightfully belonging to Plaintiff and the Class;

    (c) Awarding Plaintiff and the members of the Class the consideration paid for the Tezos tokens, with interest thereon at the legal rate, or the equivalent in monetary damages plus interest at the legal rate from the date of purchase pursuant to Cal. Corp. Code § 25503 against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

    (d) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees, expert fees, witness fees and electronic discovery fees as permitted by law; and

    (e) Granting such other and further relief as this Court may deem just and proper.

### JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all of the claims asserted in this Complaint so triable.

DATED: December 13, 2017      **HAGENS BERMAN SOBOL SHAPIRO LLP**

                    By:    /s/  *Reed R. Kathrein*
                    Reed R. Kathrein (139304)
                    Peter E. Borkon (212596)
                    Danielle Charles (291237)

715 Hearst Ave., Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: reed@hbsslaw.com
        peterb@hbsslaw.com
        daniellec@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Jason M. Leviton, *pro hac vice to be submitted*
Joel A. Fleming (281264)
Jacob A. Walker (271217)
**BLOCK & LEVITON LLP**
155 Federal Street, Suite 400
Boston, MA 02110
Telephone: (617) 398-5600
Email: jason@blockesq.com
        joel@blockesq.com
        jake@blockesq.com

*Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT - 39
Case No.:

1001464 V1

**VERIFICATION**

I, Bruce MacDonald, hereby declare and verify that: (A) I have authorized the filing of the attached Verified Complaint For: (1) Violation Of California Corporations Code § 25110 (2) Unfair Competition In Violation Of Cal. Bus. & Prof. Code §§ 17200, *Et Seq.* (the "Complaint"); (B) I have reviewed the Complaint; (C) with respect to the facts alleged in the Complaint of which I have personal knowledge, I verify that they are true, and, with respect to all other facts, I believe them to be true based on the investigation performed by my counsel and the documents they reviewed and relied upon and which are cited therein.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 12/13/17

Bruce MacDonald