Neal A. Potischman (SBN 254862)
Serge A. Voronov (SBN 298655)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California  94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: neal.potischman@davispolk.com
          serge.voronov@davispolk.com

*Attorneys for Defendant Tezos Stiftung*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRUCE MACDONALD, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> DYNAMIC LEDGER SOLUTIONS, INC., a Delaware corporation, TEZOS STIFTUNG, a Swiss Foundation, KATHLEEN BREITMAN, an Individual, ARTHUR BREITMAN, an Individual, TIMOTHY COOK DRAPER, an individual, DRAPER ASSOCIATES, JOHANN GEVERS, DIEGO PONZ, GUIDO SCHMITZ-KRUMMACHER, BITCOIN SUISSE AG, NIKLAS NIKOLAJSEN and DOES 1-100, INCLUSIVE, <br><br> Defendants. | Case No. 3:17-cv-07095-RS <br><br> **DEFENDANT TEZOS STIFTUNG'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

**PRELIMINARY STATEMENT**

Tezos Stiftung (the "Foundation"), a non-profit Swiss foundation, is dedicated to improving upon blockchain technologies like Bitcoin.  Plaintiff donated approximately $5,000 worth of Ether (another cryptocurrency) to that cause in July 2017, during a fundraiser in which the Foundation raised over $200 million.  Now, with the price of cryptocurrencies skyrocketing, plaintiff is suffering donor's remorse.  In service of his attempt to recover his donation, he has brought this *ex parte* motion seeking essentially to freeze all of the assets of the Foundation—a foreign entity,

1  governed by Swiss law and supervised by Swiss authorities—which would forestall the continued
2  progress of the cause to which he and thousands of others have contributed.  There is no basis on
3  which to grant the extraordinary relief plaintiff seeks in this application.  As set forth clearly in the
4  terms posted on the Foundation's website, plaintiff was making a non-refundable donation, not
5  investing in a security.  For that and other reasons, plaintiff has not demonstrated a likelihood of
6  success on the merits.  And in any event, plaintiff has not remotely shown that he is likely to suffer
7  irreparable harm in the absence of preliminary relief or that the balance of equities tips in his favor.

## STATEMENT OF FACTS

### I.     The Foundation and the Tezos Fundraiser

The Foundation is a duly organized Swiss nonprofit that is based in Zug, Switzerland.  (*See* Compl. ¶ 49.)  In particular, as a Swiss foundation, it is an autonomous legal entity consisting of a pool of assets irrevocably committed to a defined purpose.  Swiss Civ. Code, art. 80.  Pursuant to its charter, the Foundation is managed by the foundation board, consisting of directors who are bound by fiduciary duties to act in the best interests of the Foundation.  Both of the current board members, as part of the body of the Foundation, and the Foundation itself are subject to oversight by the Swiss Federal Foundation Supervisory Authority (*Eidgenoessische Stiftungsaufsicht*).  *Id.*, art. 84.  The Foundation is bound to use its assets only in pursuit of its declared purpose, and the Swiss authorities ensure that funds are not misused, including through examination of reports about the Foundation's operations.  *Id.*, arts. 80, 83c, 84.  In the event that the authorities determine that an entity's administration is inadequate, they have broad powers to take remedial measures, including appointing an administrator or transferring assets to another entity with a similar purpose.  *Id.*, arts. 83d, 84a.  Plaintiff does not allege that Swiss authorities have taken any such measures against the Foundation, or that the Foundation is in anything other than good standing under Swiss law.

The Foundation was created to promote and develop technology "in the fields of new open and decentralized software architectures," including the "Tezos protocol."  (Declaration of Diego Olivier Fernandez ("Fernandez Decl."), Ex. A (Tezos Contribution and XTZ Allocation Terms and

1

Explanatory Notes ("Tezos Terms"))[1] at § 1 ¶ 2.)  The Tezos protocol utilizes a decentralized blockchain technology that facilitates verification of transactions, providing certain advantages over other cryptocurrencies.  (*See id.*)  In particular, the Foundation promotes the development of "transferrable cryptographic blockchain-based digital information units called tez."  (*Id.* at § 1 ¶ 1.)  The tez—more commonly referred to as Tezos tokens or XTZ tokens—have long been, and continue to be, under development; they are not available for public use.

On July 1, 2017, the Foundation launched a fundraiser so that supporters of the Tezos protocol could contribute to the development of XTZ tokens.  (*Id.* § 3.2 ¶ 13.)  These contributions, which could be made in Bitcoin or Ether, were governed by the Tezos Terms (*id.* § 10 ¶ 47) and those terms stated explicitly that contributors were making "non-refundable donation[s]."  (*Id.* § 3.1 ¶ 12.)  Those terms further provided that "the contribrution procedure, the XTZ creation and XTZ allocation [are] considered to be executed in Alderney" (*id.* § 10 ¶ 46), which is in the Channel Islands, that Swiss law governed the contributions, and that any dispute arising therefrom "shall be exclusively and finally settled by the ordinary courts of Zug, Switzerland."  (*Id.* § 10 ¶ 48.)

The Tezos Terms contain a list of representations and warranties to which any donor to the Foundation must agree.  Among other things, donors represent that they "understand[] and accept[] that XTZ do not represent or constitute any ownership right or stake, share or security or equivalent right in or relating to TEZOS, the Client, the Tezos Network and/or any software, any public or private company, corporation, entity or property."  (*Id.* § 2 ¶ 10.)  Further, donors represent that they "intend[] to use XTZ to participate in network governance, mining activities or connecting private networks" and "[are] not contributing to TEZOS to obtain XTZ for the purpose of speculative investment."  (*Id.* § 2 ¶ 11(a), (f).)

The Foundation expressly stated in the Tezos Terms that it "**cannot guarantee that Contributors shall have any allocation of XTZ when the TEZOS Network is created.**"  (*Id.* § 1

---

[1] The Foundation maintains a publicly accessible website on which the Tezos Terms, as well as various updates for Tezos supporters, were made available.  *See* www.tezos.ch.  (Fernandez Decl. ¶ 3.)

2

¶ 3 (emphasis in original).)  Rather, any future allocation would be determined by "an independent community of participants around the world" who operated the network, and that "community has discretion to adopt or not to adopt" any allocation recommended by the Foundation.  (*Id.*)  Accordingly, "TEZOS cannot guarantee to any party that they will have an initial allocation of XTZ, because this depends upon the discretion of the community."  (*Id.*)  This concept was so important that the Foundation repeated it later in the Tezos Terms: "It remains in the community's discretion to adopt or not to adopt [the Foundation's recommendations].  TEZOS cannot guarantee to Contributors that they shall have any allocation and/or creation of XTZ as set forth in these terms."  (*Id.* § 4 ¶ 29.)  And although the contributions would be used to develop the Tezos network, the contributors were cautioned that "development may fail and that the Tezos Network and any XTZ will not be created, become useless and/or valueless due to technical, commercial, regulatory or any other reasons."  (*Id.* § 1 ¶ 4.)  Over the course of this contribution period, the Foundation received Bitcoin and Ether valued at an estimated $232 million. (Compl. ¶ 5.)

Nearly five months ago, only days after the close of the fundraiser on July 18, the Foundation announced publicly that it would diversify its cryptocurrency assets "by slowly selling some (but not all) of these holdings over the coming months and purchasing a conservative portfolio of cash, stocks, bonds, and precious metals."  (Compl. ¶ 105.)  The Foundation continued to provide updates on that diversification thereafter.  (*E.g.*, *id.* ¶ 107.)  But the Foundation has halted the diversification process.  (Fernandez Decl. ¶ 4.)  On August 10—i.e., more than four months ago—the Foundation announced that it would use $50 million to fund "companies looking to build on the Tezos platform."  (Compl. ¶ 110 (internal quotation marks omitted).)

**ARGUMENT**

In order to justify granting the "extraordinary remedy" of a temporary restraining order, it is the moving party's burden to make a clear showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Robinson v. Cal. State*

3

*Bar*, No. 5-mc-80129-JD, 2015 WL 3486724, at *3 (N.D. Cal. May 28, 2015) (internal quotation marks omitted).

Plaintiff has failed to meet that burden here, because he has not shown that the Court has jurisdiction over the Foundation; that any "securities" are even at issue in this case; that he is in any danger of suffering irreparable injury; or that the equities or the public interest favor freezing the assets of a foreign non-profit entity under the supervision of a foreign government. Plaintiff's application should be denied.[2]

## I. Plaintiff Cannot Show That U.S. Law Applies to the Transactions or That the Foundation Is Subject to Jurisdiction in the United States

Plaintiff's theory of the case rests on the misconception that his donation to the Foundation was the purchase of a security. As described in Point II below, however, plaintiff did not purchase any securities. Indeed, he did not purchase anything. He contributed to a fundraiser.

Even assuming that plaintiff could establish that he had purchased a security, in order for U.S. securities laws to apply to a security not listed on an American stock exchange, the purchase or sale must have taken place in the United States. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 273 (2010). But the contribution transaction here took place *outside* the United States. The Tezos terms are clear that any contribution to the Foundation is deemed to have taken place in Alderney (Fernandez Decl., Ex. A § 10 ¶ 46), and the Foundation itself is located in Switzerland (Compl. ¶ 22). Accordingly, neither party could have possibly incurred the necessary "irrevocable

---

[2] In light of the limited time that counsel has had to review plaintiff's *ex parte* motion, to confer with client representatives, and to prepare this opposition, the Foundation expressly reserves all arguments, including but not limited to those relating to personal jurisdiction and service. The Foundation notes in this regard that plaintiff's *ex parte* Application for Leave to serve the Swiss Defendants by electronic means did not cite this Court's decision in *Agha v. Jacobs*, No. C 07-1800 RS, 2008 WL 2051061, at *2 (N.D. Cal. May 13, 2008) (Seeborg, J.), which held that service by email to a party in the Federal Republic of Germany violated the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents because Germany had objected to service under Article 10(a). Switzerland has likewise objected to such service. *See* Hague Convention, Declarations and Reservations of Switzerland, *available at* https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=424&disp=resdn.

4

OPPOSITION TO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE
CASE NO. 3:17-CV-07095-RS

liability" in the United States when plaintiff made his donation to the Foundation. *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012) (cited in TRO at 9).

Likewise, plaintiff cannot show that the Court has personal jurisdiction over the Foundation. Because the Foundation is a Swiss entity organized under Swiss law, the Court does not have general personal jurisdiction over it. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (a court may only assert general jurisdiction over a foreign corporation "when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State" (internal quotation marks omitted)). Plaintiff attempts to manufacture specific jurisdiction by asserting that the Foundation "purposefully target[ed] investors in California and the United States" (TRO at 10), but he fails to support that assertion with a single allegation or piece of evidence. Having accepted donations made in Alderney and maintained them in Switzerland, the Foundation cannot be said to have purposefully availed itself of the benefits and privileges of California law. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156-57 (9th Cir. 2006) (holding that, to invoke specific jurisdiction against a defendant who acted outside California, the defendant's actions must have been "expressly aimed at California" through "individualized targeting"); *cf. Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (holding that the plaintiff had not shown that the foreign defendants had "availed themselves of the privilege of doing business in California" by conducting a sale in California). For that reason, the cases cited by plaintiff are inapposite; the ones that even concern foreign entities involve those entities having actually made filings with the U.S. Securities and Exchange Commission, voluntarily subjecting themselves to U.S. jurisdiction. The Foundation, in contrast, is essentially a stranger to California. Plaintiff has made no showing that the Court has personal jurisdiction over it.

**II.     Plaintiff Has Not Shown That Its Donation Was a Purchase of Securities**

Under longstanding jurisprudence, an investment contract means an investment of money in a common enterprise with a reasonable expectation of profits to be derived from the entrepreneurial efforts of others. *See SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946). But the contributions at issue here were non-binding donations; they were *expressly* and repeatedly described as such in the

5

operative documents; those documents explained that there may never be XTZ tokens; and they explained that the Foundation could simply make recommendations about XTZ token allocations, not determine any future distributions. As the terms of the contribution state,

> [S]ince the Tezos Network will be operated by an independent community of participants around the world . . . , the community has discretion to adopt or not to adopt the recommendation. Therefore, TEZOS cannot guarantee to any party that they will have an initial allocation of XTZ, because this depends upon the discretion of the community. **The Contributor understands and accepts that TEZOS cannot guarantee that Contributors shall have any allocation of XTZ when the TEZOS Network is created.**

(Ex. A at § 1 ¶ 3 (emphasis in original).) That essential element of the fundraising was emphasized throughout the Foundation's communications and literature, as were the myriad other ways described above in which the fundraising was not an offer of securities.

Any expectation that a donation to a non-profit foundation would return a profit under these circumstances would have been directly contrary to the Tezos Terms—*which plaintiff nowhere claims were misleading in any way*. In fact, plaintiff himself expressly agreed by making a donation to the Foundation that he "[was] not contributing to TEZOS to obtain XTZ for the purpose of speculative investment." (*Id.* § 2 ¶ 11(f).) Under the unambiguous language of the Tezos Terms, Plaintiff made a voluntary, non-refundable contribution: he did not purchase a security. Plaintiff, accordingly, cannot succeed on its claims.[3]

---

[3] The Statement of Recent Decision submitted by plaintiff [Dkt. No. 13] does not affect this analysis in any way because the cited decision, *SEC v. PlexCorps*, No. 17 Civ. 7007 (CBA) (E.D.N.Y. Dec. 14, 2017), arises in a far different procedural and factual context. Because that case was filed by the SEC, the court expressly used a lower standard in considering the request for equitable relief. (Slip Op. at 2.) The SEC also alleged that the defendant had committed fraud (*id.* at 3), which plaintiff here does not allege against the Foundation; and the defendant had marketed and engaged in the sale of investments (*id.* at 4), in contrast to the non-binding donations at issue here.

### III. Plaintiff Has Not Demonstrated That He Will Suffer Irreparable Harm

Irreparable harm is "harm for which there is no adequate legal remedy" and cannot be shown by economic injury alone "because such injury can be remedied by a damage award." *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1071 (N.D. Cal. 2015) (quoting *Az. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014); *Rent-a-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)).  Nor is an assertion of the mere "possibility of irreparable harm" sufficient because a plaintiff must make "a clear showing" of entitlement to the "extraordinary remedy" of an injunction.  *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  Yet plaintiff here seeks a temporary restraining order based only on speculation of potential economic loss.  That cannot justify the requested relief.

Plaintiff asserts that "there is reason to believe Defendants are looting" because they "have provided very few updates about the development of the Tezos project"—a contention that is unsupported by any allegation in the Complaint—and that the project has not yet launched.  (TRO at 15.)  Neither claim in any way supports an inference of looting, particularly when the Foundation expressly warned donors that the project may encounter delays or fail entirely.  (Fernandez Decl., Ex. A § 1 ¶ 4.)

Having failed to make any showing that the Foundation's assets are in danger, plaintiff resorts to asserting that the Foundation is converting the Bitcoin and Ether it holds into cash, stocks, bonds, and precious metals.  (TRO at 16.)  As an initial matter, plaintiff is seeking rescission pursuant to California Civil Code § 25503.  That section specifically provides that, "if the consideration given for the security is not capable of being returned," then the plaintiff may recover damages.  Accordingly, money damages are an adequate remedy for plaintiff's claims, and he cannot show irreparable harm from some possibility that the Foundation might be unable to return the specific Ether that he donated.

But even if could plaintiff show potential injury from the conversion of cryptocurrency to other forms of money, his allegations about the Foundation's conversion of cryptocurrency to cash are based on updates from July and August.  (Compl. ¶¶ 105-107.)  And the Foundation ceased

7

1  converting its assets to cash over two months ago.  (Fernandez Decl. ¶ 4.)  Thus, plaintiff's claimed
2  source of irreparable harm is illusory.

3  **IV.     The Balance of the Equities and the Public Interest Favor the Foundation**

4  Plaintiff is but a single participant in the Foundation's fundraiser, seeking to prevent the
5  Foundation from accessing its funds, which plaintiff admits far exceed the amount that plaintiff
6  alleges to have donated.  If plaintiff's application were granted, the Foundation's ongoing
7  development efforts would be severely hampered, if not grounded entirely—to the detriment of
8  thousands of other donors who continue to wish to see the Foundation succeed.

9  We note that, notwithstanding plaintiff's request for exigent relief, plaintiff nowhere
10 explains why he has delayed for *months* after making his contribution to seek a refund.  Plaintiff's
11 assertions of dissipation of assets are based on information that in most cases has been in the public
12 record for months.  The Foundation disclosed in *July* that it was diversifying its holdings of Bitcoin
13 and Ether in order to continue its development.  (Compl. ¶ 105.)  And it announced in *August* that it
14 was intending to support partnerships that could build on the Tezos platform.  (*Id.* ¶ 110.)
15 Plaintiff's claim now—months later—that those activities constitute a surprise dissipation that must
16 be blocked immediately by an *ex parte* temporary restraining order rings entirely hollow.  *See, e.g.*,
17 *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1097 (N.D. Cal. 2012) (finding
18 that "Plaintiff's delay in requesting a TRO militates against its issuance").  This is particularly true
19 given that none of the other plaintiffs who have filed lawsuits relating to related issues—in some
20 cases weeks before plaintiff filed the instant action—apparently saw a need to seek such similarly
21 expedited relief.

22 Moreover, because the Foundation is governed by Swiss law and supervised by Swiss
23 authorities, in balancing interests the Court should consider principles of comity.  *See Mujica v.*
24 *AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014) ("International comity is a doctrine of prudential
25 abstention, one that 'counsels voluntary forbearance when a sovereign which has a legitimate claim
26 to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under
27 principles of international law.'" (quoting *United States v. Nippon Paper Indus. Co.*, 109 F.3d 1, 8

28

(1st Cir. 1997)).  Plaintiff is complaining about a number of matters regarding the internal functioning of a Swiss foundation.  The Court should allow such matters to be addressed by Swiss authorities.

## CONCLUSION

For the foregoing reasons, the Foundation respectfully requests that the application be denied.

Dated:  December 15, 2017

Respectfully Submitted,

DAVIS POLK & WARDWELL LLP

By: */s/ Neal A. Potischman*
Neal A. Potischman (SBN 254862)
Serge A. Voronov (SBN 298655)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California  94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: neal.potischman@davispolk.com
serge.voronov@davispolk.com

*Attorneys for Defendant Tezos Stiftung*

9

OPPOSITION TO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE
CASE NO. 3:17-CV-07095-RS