Neal A. Potischman (SBN 254862)
Serge A. Voronov (SBN 298655)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California  94025
Telephone: (650) 752-2000
Facsimile:  (650) 752-2111
Email: neal.potischman@davispolk.com
       serge.voronov@davispolk.com

Edmund Polubinski III (*Pro Hac Vice*)
Andrew S. Gehring (*Pro Hac Vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Email: edmund.polubinski@davispolk.com
       andrew.gehring@davispolk.com

*Attorneys for Defendant Tezos Stiftung*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRUCE MACDONALD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DYNAMIC LEDGER SOLUTIONS, INC., a Delaware corporation, TEZOS STIFTUNG, a Swiss Foundation, KATHLEEN BREITMAN, an Individual, ARTHUR BREITMAN, an Individual, TIMOTHY COOK DRAPER, an individual, DRAPER ASSOCIATES, JOHANN GEVERS, DIEGO PONZ, GUIDO SCHMITZ-KRUMMACHER, BITCOIN SUISSE AG, NIKLAS NIKOLAJSEN and DOES 1-100, INCLUSIVE,<br><br>Defendants. | Case No. 3:17-cv-07095-RS<br><br>**DEFENDANT TEZOS STIFTUNG'S OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY** |

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT .......................................................................................................1

LEGAL STANDARDS ..................................................................................................................3

STATEMENT OF FACTS ..............................................................................................................3

ARGUMENT..................................................................................................................................4

    I.    Plaintiff Has Not Made a Threshold Showing of Personal Jurisdiction Over the Foundation ..............................................................................................4

    II.    Even if Plaintiff Could Establish Personal Jurisdiction Over the Foundation, He Has Failed to Show Good Cause to Accelerate the Discovery Schedule...........8

    III.    The Foundation Would Be Severely Prejudiced by Complying with Plaintiff's Discovery Demands ...............................................................................10

CONCLUSION.............................................................................................................................13

# TABLE OF AUTHORITIES

PAGE

<u>Cases</u>

*Addventure Prod., Inc. v. Weinberg*,
    No. 07CV2024 BTM(AJB), 2008 WL 11337849 (S.D. Cal. May 5, 2008) ....................... 7

*Alfasigma USA, Inc. v. Nivagen Pharm., Inc.*,
    No. 2:17-CV-1974, 2017 WL 5754227 (E.D. Cal. Nov. 28, 2017) ..................................... 3

*Alperin v. Vatican Bank*,
    No. C 99-04941 MMC(EDL), 2006 WL 1663847 (N.D. Cal. June 15, 2006) .................... 7

*Am. LegalNet, Inc. v. Davis*,
    673 F. Supp. 2d 1063 (C.D. Cal. 2009) ............................................................................... 8

*Barantsevich v. VTB Bank*,
    954 F. Supp. 2d 972 (C.D. Cal. 2013) ................................................................................. 6

*Berd v. De Bastos*,
    No. 1:16-CV-339, 2017 WL 5075249 (D.N.D. Nov. 2, 2017) ............................................ 5

*Berlin Media Art e.k. v. Does 1-654*,
    No. 11-03770 JSC, 2001 WL 36383080 (N.D. Cal. Oct. 18, 2011) ........................... 6, 12-13

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) ............................................................................................. 5

*CD Listening Bar, Inc. v. Caiman Holdings, Inc.*,
    No. SACV 08-150 AG (ANX), 2008 WL 11336948 (C.D. Cal. June 11, 2008) ................ 7

*Chacanaca v. Quaker Oats Co.*,
    No. C 10-0502 RS, 2011 WL 13141425 (N.D. Cal. June 14, 2011) ................................. 11

*Columbia Ins. Co. v. seescandy.com*,
    185 F.R.D. 573 (N.D. Cal. 1999) ........................................................................................ 7

*Davis v. Metro Prods., Inc.*,
    885 F.2d 515 (9th Cir. 1989) ............................................................................................... 5

*Gucci Am., Inc. v. Weixing Li*,
    768 F.3d 122 (2d Cir. 2014) ................................................................................................ 4

*Hansen Beverage Co. v. Innovation Ventures, LLC*,
    No. 08-CV-1166-IEGPOR, 2008 WL 3992353 (S.D. Cal. Aug. 28, 2008) ...................... 11

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ............................................................................................. 4

*Imagine That Int'l, Inc. v. CS Tech US*,
    No. 3:15-CV-1558-GPC-WVG, 2015 WL 4475219 (S.D. Cal. July 21, 2015) ............... 10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ............................................................................................................ 6

1  *Interserve, Inc. v. Fusion Garage PTE, Ltd.*,
       No. C09-95812 JW(PVT), 2010 WL 143665 (N.D. Cal. Jan. 7, 2010)...............................9

*In re LDK Solar Sec. Litig.*,
       No. C0705182WHA, 2008 WL 4369987 (N.D. Cal. Sept. 24, 2008) ...............................5

*Leibovitch v. Islamic Rep. of Iran*,
       188 F. Supp. 3d 734 (N.D. Ill. 2016),
       *aff'd*, 852 F.3d 687 (7th Cir. 2017).................................................................................4

*Magellan Grp. Inv., LLC v. First Indigenous Depository Co., LLC*,
       No. C 05-01994 JSW, 2005 WL 1629940 (N.D. Cal. July 8, 2005) .........................8, 9, 10

*Martinez v. Manheim Cent. Cal.*,
       No. 1:10-cv-01511-SKO, 2011 WL 1466684 (E.D. Cal. Apr. 18, 2011) .............................. 7

*Moss v. McLucas*,
       No. 12-CV-2368 BEN (KSC), 2012 WL 6605008 (S.D. Cal. Dec. 18, 2012) ...................... 9

*Neas Ltd. v. OJSC RUSNANO*,
       5:15-cv-01612-RMW, 2015 WL 9489896 (N.D. Cal. Dec. 30, 2015) ................................. 6

*Noblebiz, Inc. v. Wesson*,
       No. 14CV0832 W(JLB), 2014 WL 1588715 (S.D. Cal. Apr. 18, 2014) ..............................8

*Pac. Century Int'l Ltd. v. Does 1-101*,
       No. C-11-02533 (DMR), 2011 WL 5117424 (N.D. Cal. Oct. 27, 2011).............................3

*Pebble Beach Co. v. Caddy*,
       453 F.3d 1151 (9th Cir. 2006) ................................................................................. 5

*Profil Institut Fur Stoffwechselforschung GbmH v. Profil Inst. for Clinical Research*,
       No. 16CV2762-LAB (BLM), 2016 WL 7325466 (S.D. Cal. Dec. 16, 2016) ...............7, 12

*Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*,
       907 F. Supp. 2d 1086 (N.D. Cal. 2012) ...................................................................3, 7, 12

*In re Rubber Chems. Antitrust Litig.*,
       486 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................................6

*Sec. Alarm Fin. Enters., L.P. v. Nebel*,
       200 F. Supp. 3d 976 (N.D. Cal. 2016) ..............................................................................4

*SEC v. PlexCorps*,
       No. 17 CIV. 7007 (CBA), 2017 WL 6398722 (E.D.N.Y. Dec. 14, 2017) ..........................5

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
       482 U.S. 522 (1987)......................................................................................................6, 13

*Wangson Biotechnology Grp., Inc. v. Tan Tan Trading Co.*,
       No. C 08-04212 SBA, 2008 WL 4239155 (N.D. Cal. Sept. 11, 2008)..............................10

*XimpleWare Corp. v. Versata Software, Inc.*,
       No. C 13-05160 SI, 2013 WL 6405979 (N.D. Cal. Dec. 6, 2013) ..................................... 12

Rules and Statutes

Cal. Civ. Code § 25503 .................................................................................................................9

Fed. R. Civ. P. 12 ......................................................................................................................2, 6

Fed. R. Civ. P. 26 .........................................................................................................................12

Swiss Civ. Code, Art. 235.1 .........................................................................................................12

Swiss Crim. Code, Art. 271 .........................................................................................................12

Other Authorities

Moore's Fed. Prac. § 108.03 ......................................................................................................... 4

**PRELIMINARY STATEMENT**

Just one month ago, plaintiff sought a temporary restraining order ("TRO") to freeze the assets of Tezos Stiftung (the "Foundation"), a nonprofit Swiss foundation, to which plaintiff donated approximately $5,000. The Court appropriately denied plaintiff's application, concluding that plaintiff had not shown a threat of irreparable harm and finding that plaintiff had "fail[ed] to show that the defendants are in the process of dissipating assets, are strategizing to do so, or have a history of past financial misconduct. As a result, his concerns about dissipation rise to little more than speculation." (Order Denying Appl. for TRO ("TRO Order") [ECF No. 35] at 6.) With multiple suits pending in this Court that relate to precisely the same subject matter and seek substantially identical relief on behalf of exactly the same contributors, the Court also indicated that the parties in the related actions should "work together so that there is some sort of logical flow to what's being submitted to me, and to work together just generally to get this whole thing organized. . . . I want to consolidate all of this . . . . It's all going to be together in some form [or] another." (TRO Hr'g Tr. (Dec. 19, 2017) [ECF No. 45] at 59:14-25.)

Plaintiff apparently had other ideas. Despite the fact that lead plaintiff applications and accompanying motions to consolidate are expected to be filed in mere weeks in the related actions, plaintiff in this action rushed to file this motion—on substantially the same record that was before the Court on his TRO application—seeking sweeping documentary and deposition discovery from multiple defendants. There is no "logical flow" to plaintiff's unilateral action, and it increases rather than decreases the likelihood of seriatim briefing of similar (or identical) issues across multiple matters, an inefficient result for the Court and the litigants. Moreover, plaintiff seeks this relief—including burdensome and premature discovery from a Swiss foundation and Swiss individuals and entities—just weeks before the stipulated deadline for threshold motions that will address the serious jurisdictional defects in plaintiff's case.

Plaintiff's Motion for Expedited Discovery (the "Motion") essentially seeks to relitigate the TRO by asserting, on the basis of the very same allegations that underpinned the TRO application, that plaintiff needs to determine whether his speculation about dissipation of assets has merit. But what little evidence plaintiff has proffered to date not only undercuts his claim of looting, it

1

affirmatively suggests frustration in the Tezos community because money is *not* being spent as quickly as some would like.  (TRO Hr'g Tr. at 25:13-24.)  Plaintiff has not identified a single material fact that has changed since the Court's prior ruling a mere four weeks ago.  Against this backdrop, plaintiff is far from having shown the requisite "good cause" for expedited discovery.

        No doubt cognizant that neither the Federal Rules nor the Local Rules entitle him to conduct a sweeping fishing expedition to try to improve his position vis-à-vis plaintiffs who have filed related actions pending in this Court, plaintiff shoehorns his arguments into more familiar dress, asserting that he needs to "investigate" the Foundation's "personal jurisdiction defenses."  But a plaintiff is entitled to such discovery only if the complaint and the defendant's motion to dismiss raise jurisdictional questions that could be resolved through investigation.  Here, the complaint does not even remotely allege facts that would establish personal jurisdiction over the Foundation.  Plaintiff does not attempt to show that the Foundation is subject to general jurisdiction, and his boilerplate allegations of specific jurisdiction (Compl. [ECF No. 1] ¶¶ 17-19) do not nearly suffice to support jurisdiction.  This is a pure and stark pleading failure: There are no particular facts even alleged, much less a showing by plaintiff that there are material *disputed* facts such that discovery would alter the jurisdictional analysis.  Moreover, the appropriate time to consider whether jurisdictional discovery is needed—and, if so, the proper scope of any such discovery—would be *after* defendants raise jurisdictional defenses in a motion under Federal Rule of Civil Procedure 12(b)(2).  At that point, both the plaintiff and the Court can assess the extent to which any discovery may be necessary.  While plaintiff may prefer for tactical reasons to position the cart well in front of the horse in this matter, doing so is illogical, inefficient, and—most fundamentally—unnecessary because there will be no basis for jurisdictional discovery here.

        Even assuming that plaintiff had made a showing that some discovery could be appropriate in the future, the Motion well demonstrates why plaintiff's chosen vehicle is wholly inappropriate.  Seeking to interpose 26 document demands (many seeking all documents relating to broad categories of information) to three defendants, and to conduct two 30(b)(6) depositions covering a total of 28 topics, plaintiff is seeking to conduct a fishing expedition of enormous scope.  Putting to the side that most of the requests on their face plainly have nothing whatsoever

2

1  to do with personal jurisdiction, plaintiff is trying to conduct substantial merits and other
2  discovery before the Foundation—a Swiss entity—has an opportunity to present threshold
3  defenses based on personal jurisdiction (and otherwise) to the Court for resolution.  To state the
4  obvious, if a Swiss foundation is required to furnish documents and submit to deposition
5  discovery before it even has an opportunity for the Court to consider its jurisdictional defenses, it
6  would raise significant Due Process and comity concerns.

## LEGAL STANDARDS

8  As a general rule, no party is entitled to discovery prior to the Rule 26(f) conference.  *See*
9  Fed. R. Civ. P. 26(d).  The expedited discovery sought by plaintiff "is not the rule; it is the
10 exception to the rule." *Alfasigma USA, Inc. v. Nivagen Pharm., Inc.*, No. 2:17-CV-1974, 2017
11 WL 5754227, at *2 (E.D. Cal. Nov. 28, 2017) (denying expedited discovery).  "Courts in the
12 Ninth Circuit disfavor exceptions to the general rules of discovery." *Pac. Century Int'l Ltd. v.
13 Does 1-101*, No. C-11-02533 (DMR), 2011 WL 5117424, at *1 (N.D. Cal. Oct. 27, 2011)
14 (denying expedited discovery).

15 Accordingly, plaintiff "has the burden of showing good cause" in order to justify
16 deviating from the usual discovery procedures.  *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907
17 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012).  Good cause requires a demonstration that plaintiff's
18 "need for expedited discovery, in consideration of the administration of justice, outweighs the
19 prejudice to the responding party." *Id.*  The analysis of prejudice to the defendants involves
20 consideration of multiple factors, including whether a motion for preliminary injunction is
21 pending; the breadth of the discovery requests; the purpose for requesting the expedited
22 discovery; the burden on the defendants of complying with the requests; and how far in advance
23 of full discovery the requests were made.  *See id.*

## STATEMENT OF FACTS

25 There have been no material changes in circumstances since the TRO hearing.  Indeed,
26 the "Facts" section of plaintiff's brief in support of his motion consists of a single sentence
27 referring the Court to the facts set forth in his TRO application.  (Mot. at 3.)  The Foundation
28

likewise incorporates by reference the Statement of Facts in its Opposition to Plaintiff's *Ex Parte* Application for Temporary Restraining Order [ECF No. 22].[1]

**ARGUMENT**

Plaintiff has not shown entitlement to any of his requested discovery, let alone good cause to permit discovery on an accelerated basis in a wholly uncoordinated way.

**I.    Plaintiff Has Not Made a Threshold Showing of Personal Jurisdiction Over the Foundation**

As the Foundation will demonstrate in its forthcoming motion to dismiss, the allegations in plaintiff's complaint do not suffice to establish personal jurisdiction over the Foundation, and the complaint should be dismissed for that and other reasons.  In light of the absence of personal jurisdiction over the Foundation, ***no*** party discovery of the Foundation—expedited or otherwise—is appropriate.  *See, e.g.*, *Leibovitch v. Islamic Rep. of Iran*, 188 F. Supp. 3d 734, 745 (N.D. Ill. 2016), *aff'd*, 852 F.3d 687 (7th Cir. 2017) ("[A] court must have personal jurisdiction to order compliance with a discovery request."); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014) (holding that a court "must have personal jurisdiction" to order compliance with a discovery request); *see generally* Moore's Fed. Prac. § 108.03 ("Jurisdiction is required for the state or federal government . . . to exert power over the particular person or property in question.").

The only allegations of jurisdiction in the complaint are mere boilerplate.  (Compl. ¶¶ 17-19.)[2]  Plaintiff does not (and cannot) claim that the Foundation, founded and based in Switzerland (*id.* ¶ 22), is subject to general jurisdiction in the United States.  Nor do his claims arise from an agreement between the Foundation and DLS.  Unable to rely on the complaint's allegations, plaintiff asserts in the Motion—without any support—that the fundraiser out of which his claims

---

[1] Capitalized terms not otherwise defined have the meaning ascribed to them therein.

[2] Plaintiff conflates DLS and the Foundation (Mot. at 4; Compl. ¶¶ 17-19), but there is no dispute that DLS and the Foundation are legally distinct entities.  Plaintiff cannot bootstrap DLS's presence in California into a claim of jurisdiction over the Foundation.  *See Sec. Alarm Fin. Enters., L.P. v. Nebel*, 200 F. Supp. 3d 976, 984 (N.D. Cal. 2016) ("Personal jurisdiction over each defendant must be analyzed separately." (quoting *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129-30 (9th Cir. 2003)).

4

do arise "purposefully targeted investors in California and the United States." (Mot. at 5.) But the complaint contains no factual allegations establishing that the Tezos fundraiser in any way targeted California residents. The Tezos Terms that governed that fundraising contain no geographical limitations on who could make contributions to the fundraiser. (Fernandez Decl. [ECF No. 22-1], Ex. A.) Indeed, a petition allegedly signed by members of the Tezos community that plaintiff appended to his motion reflects signatures "by members from 95 countries." (Decl. of Reed R. Kathrein in Supp. of Mot. for Expedited Disc. ("Kathrein Decl."), Ex. A at 4.) Moreover, the Tezos Terms are clear that any contribution to the Foundation is deemed to have taken place in Alderney, that contributions are governed by Swiss law, and that any dispute arising therefrom is subject to the exclusive jurisdiction of Switzerland. (Fernandez Decl., Ex. A § 10 ¶¶ 46, 48.) Nothing about the structure of the fundraising suggests an intent by the Foundation to direct itself to *California*. Plaintiff has not offered a scrap of evidence, or even the barest of allegations, to show the Foundation's purposeful availment of the laws of California in connection with the fundraiser to which plaintiff contributed. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156-57 (9th Cir. 2006) (holding that, to invoke specific jurisdiction against a defendant who acted outside California, the defendant's actions must have been "expressly aimed at California" through "individualized targeting"); *cf. Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (holding that plaintiff had not shown that foreign defendants had "availed themselves of the privilege of doing business in California" by conducting a sale in California).[3]

---

[3] Plaintiff's citation of cases arising in the context of "traditional initial public offerings" to support personal jurisdiction is entirely inapposite. Those courts found jurisdiction not because of the mere fact of an offering, but rather because the defendants took affirmative actions to avail themselves of the laws of the forum. (Mot. at 4-5 (citing, e.g., *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 522 (9th Cir. 1989) (finding jurisdiction where defendants "purposefully directed their activities toward Arizona" by "solicit[ing] business from Arizona residents"); *In re LDK Solar Sec. Litig.*, No. C0705182WHA, 2008 WL 4369987, at *6 (N.D. Cal. Sept. 24, 2008) (finding jurisdiction where defendants used the NYSE to sell stock and made filings with the SEC)).) Plaintiff's other, out-of-circuit cases, serve him no better. (Mot. at 5 (citing *SEC v. PlexCorps*, No. 17 CIV. 7007 (CBA), 2017 WL 6398722, at *2 (E.D.N.Y. Dec. 14, 2017) (in a case brought by the SEC, neither analyzing nor resolving the jurisdictional question); *Berd v. De Bastos*, No. 1:16-CV-339, 2017 WL 5075249, at *3 (D.N.D. Nov. 2, 2017) (finding jurisdiction over

5

These threshold jurisdictional issues will be litigated promptly, on a schedule to which plaintiff himself stipulated—and that the Court so ordered—less than two weeks ago. (Stip. and Order Regarding Serv. on Defs. Resident Outside the U.S. (Jan. 5, 2018) [ECF No. 49] (setting a March 6, 2018 deadline to respond to the complaint).) Plaintiff's attempt to pre-litigate the issue now is entirely inappropriate, as is his attempt to get party discovery before this important jurisdictional issue has been briefed, much less decided. Permitting discovery of a Swiss foundation before the Court has had an opportunity to consider its defenses pursuant to Federal Rule 12(b)(2) would raise serious concerns of violating Due Process and principles of comity. *See, e.g.*, *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 261 (2004) (recognizing that "comity and parity concerns may be important as touchstones for a district court's exercise of discretion"); *In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1081 (N.D. Cal. 2007) ("Rule 26 grants the court discretion to limit discovery on several grounds, including international comity." (citing *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 (1987))).

Nor has plaintiff justified his baseless request for jurisdictional discovery. He has failed to make even the threshold showing necessary for such discovery. *See Neas Ltd. v. OJSC RUSNANO*, 5:15-cv-01612-RMW, 2015 WL 9489896, at *2 (N.D. Cal. Dec. 30, 2015) (rejecting jurisdictional discovery for foreign defendants where plaintiffs made only "broad assertions" about defendants' domestic activities); *Berlin Media Art e.k. v. Does 1-654*, No. 11-03770 JSC, 2001 WL 36383080, at *3 (N.D. Cal. Oct. 18, 2011) (denying motion for expedited discovery where plaintiff had not made "a prima facie showing" of personal jurisdiction). And he has articulated no basis on which to infer that his requested discovery would shed light on some disputed jurisdictional fact or otherwise reveal a basis for asserting jurisdiction—he is, in short, seeking to conduct an improper "fishing expedition." *Neas*, 2015 WL 9489896, at *4 (internal quotation marks omitted); *accord Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 997-98 (C.D. Cal. 2013) (rejecting jurisdictional

---

individual alleged, among other contacts, to have traveled to forum in connection with the promotion of securities and sent promotional documents to forum)).)

discovery where "it is unclear how further discovery concerning [the alleged basis for specific jurisdiction] could develop pertinent facts"); *Martinez v. Manheim Cent. Cal.*, No. 1:10-cv-01511-SKO, 2011 WL 1466684, at *5 (E.D. Cal. Apr. 18, 2011) (rejecting jurisdictional discovery "in the absence of a minimal factual showing supporting personal jurisdiction and . . . where no theory has been posited about what facts would be discovered and what they would show if Plaintiffs were permitted to fish on a hunch that something might be caught in a widely-cast net").[4]

And in any event, even if there were a plausible basis for such discovery, the proper time to assess such a request would be after the issue has been joined and disputed factual issues that could be resolved through discovery—if any—had been identified.  Before that point, the Court cannot reasonably consider the necessity or appropriate scope of jurisdictional discovery.  It is for that reason that such discovery is rarely sought prior to the filing of a motion challenging personal jurisdiction pursuant to Federal Rule 12(b)(2).  *See Alperin v. Vatican Bank*, No. C 99-04941 MMC(EDL), 2006 WL 1663847, at *3 (N.D. Cal. June 15, 2006) (finding that jurisdictional discovery was "not ripe" and would be "premature" before defendant "file[s] a motion to dismiss based on lack of jurisdiction"); *see also Rovio*, 907 F. Supp. 2d at 1099 (noting that a factor against expedited discovery is the lack of a pending motion for preliminary injunction); *Profil Institut Fur Stoffwechselforschung GbmH v. Profil Inst. for Clinical Research*, No. 16CV2762-LAB (BLM), 2016 WL 7325466, at *4 (S.D. Cal. Dec. 16, 2016) (finding that jurisdictional discovery was "premature" prior to resolution of a motion to dismiss that "will significantly impact the scope and permissibility of any discovery").

---

[4] The cases cited by plaintiff to support his Motion are, once again, entirely inapposite because there plaintiffs had made evidentiary showings that jurisdictional discovery would aid in resolving jurisdictional disputes.  (Mot. at 7 (citing *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 579 (N.D. Cal. 1999) (permitting "this extraordinary application of the discovery process" to ascertain the identity of elusive defendants, where "[m]ost of the addresses" associated with defendants' aliases "show a California domicile"); *Addventure Prod., Inc. v. Weinberg*, No. 07CV2024 BTM(AJB), 2008 WL 11337849, at *3 (S.D. Cal. May 5, 2008) (permitting jurisdictional discovery where plaintiff had adduced evidence of defendant's e-mail blasts to California residents, "which suggest that [defendant] may have been involved in other sales activity in California"); *CD Listening Bar, Inc. v. Caiman Holdings, Inc.*, No. SACV 08-150 AG (ANX), 2008 WL 11336948, at *1 (C.D. Cal. June 11, 2008) (noting without elaboration only that the court had previously authorized jurisdictional discovery)).)

In approximately six weeks, the Foundation anticipates comprehensively briefing a motion to dismiss that will address, among other issues, personal jurisdiction.  Until those issues have received a full airing, discovery is not appropriate.

## II. Even if Plaintiff Could Establish Personal Jurisdiction Over the Foundation, He Has Failed to Show Good Cause to Accelerate the Discovery Schedule

Even if there were personal jurisdiction over the Foundation, plaintiff has not remotely established good cause for the uncoordinated, premature discovery he seeks.  Plaintiff claims that he needs unilateral discovery at this early juncture to "explore" issues and "fill in evidentiary gaps" to determine whether to move for a preliminary injunction. (Mot. at 6.)  Plaintiff, in other words, would like free rein to search for any information that could bolster claims that the Court rejected only weeks ago.  That is not how discovery should be used even in the ordinary course, let alone on an expedited schedule.  And plaintiff has not established that his claimed need to ascertain whether to bring a preliminary injunction warrants accelerating discovery.

Contrary to plaintiff's assertions, "expedited discovery is not automatically granted merely because a party seeks a preliminary injunction," or, as in this case, is contemplating seeking one after his TRO application was denied. *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009).  Rather, discovery into preliminary injunction matters is appropriate only if plaintiff makes ***an evidentiary showing*** of an "imminent" risk of irreparable harm—otherwise, there is no reason why "plaintiff cannot wait to conduct [his inquires] through the normal course of discovery." *Magellan Grp. Inv., LLC v. First Indigenous Depository Co., LLC*, No. C 05-01994 JSW, 2005 WL 1629940, at *2 (N.D. Cal. July 8, 2005) (declining expedited discovery of "the extent, condition, and location of [] collateral" where plaintiff failed to show "an imminent threat that [defendant] is going to dispose of the collateral").[5]

---

[5] Plaintiff, citing authority from the unfair competition context, asserts that expedited discovery might be appropriate "even where a plaintiff has not yet demonstrated irreparable injury." (Mot. at 6.)  But as plaintiff's own cases make clear, courts grant expedited discovery only when a plaintiff has produced evidence of an ***imminent threat*** of irreparable injury, which plaintiff here has failed to do. *See Noblebiz, Inc. v. Wesson*, No. 14CV0832 W(JLB), 2014 WL 1588715, at *1 (S.D. Cal. Apr. 18, 2014) (in misappropriation case, finding good cause for "limited" discovery where plaintiff "proffered facts that provide a reasonable basis to believe" that

8

OPPOSITION TO MOTION FOR EXPEDITED DISCOVERY
3:17-CV-07095-RS

Plaintiff here has not produced *any* evidence of an imminent risk of irreparable harm. Instead, he has simply rehashed the allegations he raised at the TRO hearing—without offering any new evidence[6]—and asks the Court to infer a threat of looting from what he characterizes as "uncertainty." (Mot. at 7.) The Court has already rejected this argument as "little more than speculation" when it denied his request for a TRO. (TRO Order at 6 (noting that plaintiff's allegations, including those advanced here, are *not* "strong evidence of looting").) Indeed, plaintiff submitted evidence in connection with the TRO indicating "that everything seems to be so frozen . . . that the Swiss banks and others are refusing to process . . . transactions and the like" so that any "effort to loot . . . couldn't get very far." (TRO Hr'g Tr. at 25:13-24.) For this and other reasons, the Court expressly held that plaintiff's unsupported allegations simply "are not enough to suggest an immediate risk of irreparable harm." (TRO Order at 5.) Plaintiff has offered no reason for the Court to change its conclusion and has therefore failed to meet his burden of demonstrating an imminent threat justifying expedited discovery. *See, e.g.*, *Magellan*, 2005 WL 1629940, at *2; *Moss v. McLucas*, No. 12-CV-2368 BEN (KSC), 2012 WL 6605008, at *3 (S.D. Cal. Dec. 18, 2012) (in securities fraud case, denying expedited discovery because "[p]laintiff has not met his burden in establishing that [defendants] are liquidating assets to avoid recovery by [p]laintiff").

And in any event, plaintiff cannot establish a threat of irreparable harm because his alleged injury is entirely compensable by money damages. As the Court has recognized, California Civil Code § 25503—the section under which plaintiff seeks relief—expressly provides that "if the consideration given for the security is not capable of being returned," then a plaintiff may recover money damages. (TRO Order at 5.) Plaintiff here claims to have donated

---

defendant had accessed confidential files containing trade secrets); *Interserve, Inc. v. Fusion Garage PTE, Ltd.*, No. C09-95812 JW(PVT), 2010 WL 143665, at *1-2 (N.D. Cal. Jan. 7, 2010) (in misappropriation case, finding numerous facts that "support plaintiff['s] claim that it may be irreparably harmed if expedited discovery is not permitted").

[6] Although plaintiff has included five new exhibits with his Motion, those exhibits—in his words—provide only one "new" piece of information (concerning a bankruptcy of a wholly separate venture in which Mr. Gevers is involved). (Mot. at 2 n.2.) This assertion, however, does not support any inference of dissipation of assets at the Foundation and in any event is not "new." As noted in plaintiff's own exhibit, that bankruptcy was initiated on December 5, 2017, well before plaintiff sought a TRO in this case. (Kathrein Decl., Ex. E.)

9

1    crypto-assets to the Foundation worth approximately $5,000.  Plaintiff has offered no basis to

2    doubt that the Foundation, which raised assets worth approximately $232 million in July 2017,

3    would have more than ample assets to compensate this plaintiff, or even the proposed class he

4    seeks to represent, which consists of the subset of worldwide donors who happen to hail from

5    California.  Unable to show that money damages would be inadequate, plaintiff has no basis to

6    explore whether to seek a preliminary injunction to freeze the Foundation's assets.  *See Imagine*

7    *That Int'l, Inc. v. CS Tech US*, No. 3:15-CV-1558-GPC-WVG, 2015 WL 4475219, at *7 (S.D.

8    Cal. July 21, 2015) (denying expedited discovery where TRO had been denied on ground that

9    plaintiff's harms "can be repaired with money damages"); *Magellan*, 2005 WL 1629940, at *1

10   (denying expedited discovery after finding that money damages were adequate).

11         Plaintiff's assertion that he needs to accelerate discovery in order to forestall the

12   speculative possibility that he may not be able to recover the $5,000 worth of Ether that he

13   donated to the Foundation rings hollow.  He has shown no reason to believe that the Foundation

14   is dissipating cryptocurrency or that money damages could not satisfy his claim.  For that reason,

15   he has failed to establish good cause for the premature unilateral discovery that he seeks.

16   **III.    The Foundation Would Be Severely Prejudiced by Complying with Plaintiff's**
17          **Discovery Demands**

18         This Motion should be denied both because plaintiff lacks personal jurisdiction over the

19   Foundation and because he has failed to establish good cause for any premature discovery.  But

20   even if there were some need for early discovery, the Motion should still be denied because of

21   the severe prejudice to the Foundation of complying with plaintiff's discovery demands.  *See*

22   *Wangson Biotechnology Grp., Inc. v. Tan Tan Trading Co.*, No. C 08-04212 SBA, 2008 WL

23   4239155, at *7 (N.D. Cal. Sept. 11, 2008) (plaintiff must establish that the need for discovery

24   "outweighs the prejudice to the responding party").  Any accelerated discovery would occur in a

25   completely uncoordinated way vis-à-vis the actions that were previously filed in this Court and

26   which remain pending, directly contradicting this Court's instruction and likely requiring the

27   Foundation to conduct repetitive discovery across multiple cases.

28

After denying the TRO, this Court told the parties to "give me a proposed plan of some kind as to how you want this to be litigated." (TRO Hr'g Tr. at 60:1-3.) The Court instructed the parties to

> work together so that there is some sort of logical flow to what's being submitted to me, and to work together just generally to get this whole thing organized. . . . I want to consolidate all of this, so I'm not going to have a preliminary injunction hearing for [plaintiff] and a preliminary injunction hearing on [the] related cases. It's all going to be put together in some form [or] another.

(*Id.* at 59:14-25.) Notwithstanding the Court's direction, plaintiff—who purports to represent a class of individuals who would be members of the classes sought to be certified in the related actions, would be represented by plaintiff's counsel in those actions, and is complaining about the same fundraiser as the plaintiffs in those actions—has sought to initiate expansive discovery regarding merits and other issues. Although the Foundation believes that it should be dismissed from all of the actions, should the Court disagree the Foundation will be in the position of litigating parallel matters on uncoordinated schedules, substantially increasing its costs. This process almost certainly would result in greater demands on the Court, as the parties litigate disputes multiple times—a burden that would have been avoided by coordinating the actions in the first place. *See Chacanaca v. Quaker Oats Co.*, No. C 10-0502 RS, 2011 WL 13141425, at *2 (N.D. Cal. June 14, 2011) (Seeborg, J.) (noting that discovery coordination "would appear to save both time and costs" for the parties and the Court).

These issues are exacerbated by the sheer breadth of the discovery plaintiff has requested. Plaintiff seeks to serve 26 document requests (nearly all of which demand "any" or "all" documents about a given topic)[7] to each of three defendants. (Mot., Ex. A.) The subjects covered

---

[7] Plaintiff has expressly included in these demands the production of electronically stored information (Mot., Ex. A at 2), which courts have recognized is particularly burdensome in the context of expedited discovery. *See, e.g.*, *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-CV-1166-IEGPOR, 2008 WL 3992353, at *2 (S.D. Cal. Aug. 28, 2008) (finding that requests that "would entail an extensive search for electronically stored information . . . could be conducted more effectively after the parties hold their Rule 26(f) conference" such that the need did not outweigh the prejudice). That fact is even more true in the case of foreign parties located

11

by the requests are wide-ranging, most with no connection whatsoever to establishing any sort of harm that would support a preliminary injunction or plaintiff's claimed jurisdictional issues. For instance, plaintiff seeks "[a]ny documents concerning how the [fundraiser proceeds] were received, where, and in what form," "[a]ll documents and communications relating to the formation and governance of DLS and the Foundation," and "[a]ll communications between the Breitmans and/or DLS and the Foundation since the [fundraiser]." (*Id.* at 6-8.) Plaintiff's requests do not meet the proportionality standard of Rule 26(b)(1), much less the heightened standard requiring them to be "narrowly tailored." For that reason alone, the Motion should be denied. *See, e.g.*, *Rovio*, 907 F. Supp. 2d at 1100 (denying expedited discovery because request was not "narrowly tailored to obtain information relevant to a preliminary injunction determination"); *Profil Institut*, 2016 WL 7325466, at *3 (denying expedited discovery because, among other reasons, the "requests are broad, burdensome, and directed toward the merits of the dispute"); *XimpleWare Corp. v. Versata Software, Inc.*, No. C 13-05160 SI, 2013 WL 6405979, at *3 (N.D. Cal. Dec. 6, 2013) (denying expedited discovery because the requests "are overbroad and are not narrowly tailored").

Plaintiff also seeks two separate 30(b)(6) depositions—one of each the Foundation and DLS—on a total of *28 deposition topics*, 18 of which are directed to the Foundation, covering the same overbroad subjects as the document requests. That degree of breadth would hardly be acceptable in ordinary discovery, and it is clear that plaintiff did not even attempt to "narrowly tailor" those topics. Asking a Foundation representative to prepare on that many subjects of such wide-ranging scope, on an accelerated timeframe, would be exceedingly onerous. The requested deposition is yet more burdensome in this particular context, where the Foundation, which operates in Switzerland, would need to produce a non-U.S. resident for deposition—still before the question of personal jurisdiction has even been properly presented to the Court. *See Berlin Media*, 2001

---

in countries that have data privacy laws that must be navigated, increasing the burden of compliance, such as Switzerland. *See* Swiss Civ. Code, Art. 235.1 (Federal Act on Data Protection). Indeed, Switzerland is so strict in its laws concerning document production to foreign countries that, if ordered to produce documents at this stage, there could be criminal penalties for the Foundation or its attorneys. *See* Swiss Crim. Code, Art. 271 (penalizing "activities on behalf of a foreign state on Swiss territory without lawful authority").

12

OPPOSITION TO MOTION FOR EXPEDITED DISCOVERY
3:17-CV-07095-RS

WL 36383080, at *4 (denying motion for expedited discovery and noting that it is "fundamentally unfair" to impose discovery costs on a defendant over whom jurisdiction has not been shown to be "likely"); *see also Societe Nationale*, 482 U.S. at 546 ("American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position.").

When set against the burdens on both the Foundation and this Court posed by plaintiff's utter refusal to coordinate with the other actions or to tailor his requests, permitting plaintiff to embark on a fishing expedition into unsubstantiated canards can hardly be justified.

## CONCLUSION

For the foregoing reasons, the Foundation respectfully requests that the Motion be denied. To the extent the Court grants any portion of the Motion, the Foundation reserves all objections to any discovery that plaintiff may serve, including objections under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.

Dated: January 17, 2018

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

By: */s/ Neal A. Potischman*
Neal A. Potischman (SBN 254862)
Serge Voronov (SBN 298655)
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111
neal.potischman@davispolk.com
serge.voronov@davispolk.com

Edmund Polubinski III (*Pro Hac Vice*)
Andrew S. Gehring (*Pro Hac Vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
edmund.polubinski@davispolk.com
andrew.gehring@davispolk.com

*Attorneys for Defendant Tezos Stiftung*