**LTL ATTORNEYS LLP**
Enoch H. Liang (SBN 212324)
enoch.liang@ltlattorneys.com
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel: 650-422-2130
Fax: 213-612-3773

**LTL ATTORNEYS LLP**
James M. Lee (SBN 192301)
james.lee@ltlattorneys.com
Caleb H. Liang (Bar No. 261920)
caleb.liang@ltlattorneys.com
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel: 213-612-8900
Fax: 213-612-3773

**HUNG G. TA, ESQ. PLLC**
Hung G. Ta
hta@hgtlaw.com
JooYun Kim
jooyun@hgtlaw.com
Natalia D. Williams
natalia@hgtlaw.com
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7290
Fax: 646-453-7289

*Proposed Co-Lead Counsel for Movant Arman Anvari and the Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRUCE MACDONALD, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>  v.<br><br>DYNAMIC LEDGER SOLUTIONS, INC., a Delaware corporation, TEZOS STIFTUNG, a Swiss Foundation, KATHLEEN BREITMAN, an Individual, ARTHUR BREITMAN, an Individual, TIMOTHY COOK DRAPER, an Individual, DRAPER ASSOCATES, JOHANN | Case No. 3:17-cv-07095-RS<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ARMAN ANVARI'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**<br><br>**CLASS ACTION** |

| | |
|---|---|
| GEVERS, DIEGO PONZ, GUIDO SCHMITZ-KRUMMACHER, BITCOIN SUISSE AG, NIKLAS NIKOLAJSEN, and DOES 1-100, INCLUSIVE,<br><br>Defendants. | Judge:      Hon. Richard Seeborg<br>Courtroom: 3, 17TH Floor |
| GGCC, LLC, an Illinois Limited Liability Company, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>DYNAMIC LEDGER SOLUTIONS, INC., a Delaware corporation, TEZOS STIFTUNG, a Swiss Foundation, KATHLEEN BREITMAN, an Individual, ARTHUR BREITMAN, an Individual,<br><br>Defendants. | Case No. 3:17-cv-06779-RS |
| ANDREW OKUSKO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>DYNAMIC LEDGER SOLUTIONS, INC., THE TEZOS FOUNDATION, KATHLEEN BREITMAN, ARTHUR BREITMAN, and TIMOTHY DRAPER,<br><br>Defendants. | Case No: 3:17-cv-06829-RS |
| ANDREW BAKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>DYNAMIC LEDGER SOLUTIONS, INC., a Delaware Corporation, TEZOS STIFTUNG, a Swiss Foundation, KATHLEEN BREITMAN, an individual, ARTHUR BREITMAN, an individual, JOHANN GEVERS, an individual, STRANGE BREW STRATEGIES, LLC, a California limited liability company, and DOES 1 through 100 inclusive,<br><br>Defendants. | Case No. 3:17-cv-06850-RS |

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ARMAN ANVARI'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL
3:17-CV-07095-RS

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. THE RELATED ACTIONS SHOULD BE CONSOLIDATED ................................................ 2

III. MR. ANVARI HAS THE LARGEST FINANCIAL INTEREST IN THE LITIGATION, AND IS THE PRESUMPTIVE LEAD PLAINTIFF ......................................... 4

IV. MR. ANVARI'S MOTION WAS TIMELY AND CORRECTLY FILED ............................... 5

V. MR. ANVARI'S CERTIFICATION IS PROPER .................................................................. 7

VI. MR. ANVARI'S PREVIOUS EMPLOYMENT AT THE LAW FIRM OF PERKINS COIE DOES NOT RENDER HIM INADEQUATE ................................................................. 8

VII. MR. ANVARI'S CHOICE OF COUNSEL SHOULD BE APPROVED ................................. 9

VIII. CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

Cases

*Bhojwani v. Pistiolis*, No. 06 Civ. 13761,
  2007 WL 2197836 (S.D.N.Y. July 31, 2007) ................................................................. 7

*Carson v. Clarent Corp.*,
  2001 WL 1782712 (N.D. Cal. Dec. 14, 2001) ................................................................ 6

*Chill v. Green Tree Fin. Corp.*,
  181 F.R.D. 398 (D. Minn. 1998) .................................................................................. 11

*Ferrari v. Gisch*,
  225 F.R.D. 599 (C.D. Cal. 2004) ................................................................................. 11

*In re Advanced Tissue Sciences Sec. Litig.*,
  184 F.R.D. 346 (S.D. Cal.1998) .................................................................................. 11

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ......................................................................... 4, 6, 10, 11

*In re Microstrategy Inc., Sec. Litig.*,
  110 F. Supp. 2d 427 (E.D. Va. 2000) ............................................................................ 6

*In re Network Assocs. Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) .......................................................................... 6

*In re Telxon Corp. Sec. Litig.*,
  67 F. Supp. 2d 803 (N.D. Ohio 1999) ........................................................................... 6

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
  199 F. Supp. 2d 993 (C.D. Cal. 2002) ........................................................................... 3

*Law Enforcement Ret. Sys. v. Adeptus Health Inc.*,
  2017 WL 3780164 (E.D. Tex. Aug. 31, 2017) .............................................................. 6

*People v. Figueroa*,
  41 Cal. 3d 714 n.26 (1986) ............................................................................................ 3

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Labranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................................... 7, 8

*Skwortz v. Crayfish Co.*,
  2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001) .............................................................. 6

*Takeda v. Turbodyne Techs., Inc.*,
  67 F. Supp. 2d 1129 (C.D. Cal. 1999) ........................................................................... 2

*Zhu v. UCBH Holdings, Inc.*,
  682 F. Supp. 2d 1049 (N.D. Cal. 2010) .......................................................................................... 6

Statutes

15 U.S.C. § 77 ................................................................................................................. 3, 4, 5, 7, 11

18 U.S.C. § 2311 ............................................................................................................................. 3

California Corporations Code Sections 25110-25111 .................................................................... 3

Corporate Securities Law of 1968 .................................................................................................. 3

Corporations Code section 25019 .................................................................................................. 3

Rules

Fed. R. Civ. P. 42(a) .................................................................................................................... 2, 4

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

Arman Anvari ("Mr. Anvari") respectfully submits this reply memorandum of points and authorities in further support of his motion ("Motion") to be appointed Lead Plaintiff and for approval of his selection of Lead Counsel.

## I.   PRELIMINARY STATEMENT

Mr. Anvari should be appointed Lead Plaintiff, and his attorneys should be appointed Lead Counsel. It is undisputed that Mr. Anvari filed his Motion in the *MacDonald*[1] action before the statutory deadline. It is further undisputed that Mr. Anvari has the largest financial interest in the litigation. Under the PSLRA, Mr. Anvari is therefore the presumptive Lead Plaintiff.

The competing movants do not dispute that Mr. Anvari's claims are typical of the claims of all Class members. Instead, the competing movants make essentially two sets of arguments.

First, the competing movants argue that Mr. Anvari filed his Motion in the wrong case, and that he submitted a certification disclosing his interest in this litigation that was defective because it was not "personally signed." The competing movants are incorrect. As set forth below, the *MacDonald* action was one of the Related Actions[2] and Mr. Anvari responded to a notice published by the lawyers for *MacDonald* when he filed his Motion in that action. Further, Mr. Anvari's certification was not deficient because, as Civil L.R. 3-7(b) makes clear, the certification was not subject to the "personally signed" requirement in the PSLRA.

Second, the competing movants argue that Mr. Anvari is not adequate because of his prior employment at a law firm which advised cryptocurrency startups, and because his chosen counsel have no experience in conducting securities class actions. Again, the competing movants' argument is factually, and legally, incorrect. Mr. Anvari never worked on cryptocurrency transactions in his previous employment. Further, as a sophisticated attorney knowledgeable about the subject matter, Mr. Anvari will vigorously represent the interests of the Class.

---

[1] "*MacDonald*" refers to *MacDonald v. Dynamic Ledger Solutions, Inc.*, No. 17-cv-07095.

[2] The "Related Actions" are: (1) *GGCC, LLC v. Dynamic Ledger Solutions, Inc., et al.*, No. 17-cv-06799 ("*GGCC*"); (2) *Okusko v. Dynamic Ledger Solutions, Inc., et al.*, No. 17-cv-06829 ("*Okusko*"); (3) *Baker v. Dynamic Ledger Solutions, Inc., et al.*, No. 17-cv-06850 ("*Baker*"); and (4) the *MacDonald* action.

1

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ARMAN ANVARI'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL
3:17-CV-07095-RS

Moreover, his counsel *have* handled from inception to settlement other securities class actions. Contrary to the competing movants' arguments, Mr. Anvari's counsel are experienced advocates fully capable of representing Mr. Anvari and the Class. But more importantly, the PSLRA does not sanction second-guessing Mr. Anvari's choice of counsel except under limited circumstances such as self-dealing or irrationality, none of which exist here. In short, none of the competing movants' petty disparagements of counsel withstand any scrutiny.

Because Mr. Anvari is the presumptive Lead Plaintiff and satisfies the requirements of Rule 23, the Court need not even assess whether any of the competing movants satisfies the threshold requirements of the PSLRA, and the competing motions should be denied.

Finally, failure to consolidate all Related Actions will inevitably result in duplicative litigation with potentially conflicting strategic goals that could hinder adequate representation of class interests. The Related Actions arise from the same facts and circumstances, and involve the same legal issues. Accordingly, they should be consolidated under Rule 42(a).

## II.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Under Rule 42(a), the Court may consolidate actions when they involve "a common question of law or fact." Fed. R. Civ. P. 42(a). When confronted with parallel state and federal securities law claims, courts routinely order consolidation. *See*, *e.g.*, *In re Global Crossing, Ltd. Sec. Litig.*, Nos. 02 Civ. 910, 03 Civ. 4521, 2004 U.S. Dist. LEXIS 5323, at *7-8 (S.D.N.Y. Mar. 30, 2004) ("[t]he actions … brought under the federal securities laws or state laws relating to fraud in connection with the issuance, purchase or sale of securities … are consolidated"); *In re Extreme Networks, Inc. S'holder Derivative Litig.*, No. C-07-02268 RMW, 2009 U.S. Dist. LEXIS 111445, at *3 (N.D. Cal. Nov. 17, 2009) ("[t]his case consolidates a number of lawsuits asserting violations of federal securities and state laws"). This is because the primary goal of consolidation is to serve "the interest of judicial economy and to relieve the parties and absent class members of the burdens associated with participating in duplicative litigation …." *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1130 (C.D. Cal. 1999). "The interests of judicial economy are particularly strong in securities class action cases." *Casden v. HPL Techs., Inc*, No.

2

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ARMAN ANVARI'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL
3:17-CV-07095-RS

C-02-3510 VRW, 2003 U.S. Dist. LEXIS 19606, at *5 (N.D. Cal. Sept. 29, 2003).

Here, *MacDonald* and the other Related Actions overlap in both law and fact. MacDonald previously argued that "there is meaningful overlap" between Defendants in the actions, and that all actions "concern the same transaction/event." *GGCC* Dkt. No. 14. Although the *MacDonald* action alleges violations of California state securities law, these state law claims substantially overlap with federal securities law. As the California Supreme Court has held:

> The definition of "security" under federal law (15 U.S.C. § 77b(1); 18 U.S.C. § 2311) ***served as the model for the definition in Corporations Code section 25019*** …. As such, decisions interpreting the federal definition are helpful in resolving issues presented under the state law.

*People v. Figueroa*, 41 Cal. 3d 714, 727 n.14, 735 n.26 (1986) (emphasis added) (noting that it is "[t]he federal decisions … to which this court looks for guidance on the issue [of what is a security]"). Likewise, California Corporations Code Sections 25110-25111, which address whether an entity's offering of securities have been "qualified," reference federal law and qualification by the SEC. Indeed, the *MacDonald* complaint itself states that "Defendants' failure to register Tezos tokens as a security with the SEC prior to offering them to the public in the Tezos ICO violates the Corporate Securities Law of 1968, Cal. Corp. Code § 25110 and ***Sections 5(a) and 5(c) of the Securities Act of 1933 (15 U.S.C. §§ 77e(a) and 77e(c))*** …." *MacDonald* Dkt. No. 1 ¶ 135(a) (emphasis added). Given the substantial factual and legal overlap between all the Related Actions, and given that the proposed Class fully subsumes any California-based Tezos investors, the interests of judicial economy favor consolidation.

Should the Lead Plaintiff choose to assert these state law claims (the relief for which duplicates those asserted in the federal-law actions), they can be pled in a forthcoming consolidated amended complaint. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 998 (C.D. Cal. 2002) (SLUSA preclusion only applies to claims regarding a "covered security" which is defined as "one (1) listed on a national securities exchange, *or* (2) one 'issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940'") (citing 15 U.S.C. § 77r(b)(1), (2)). No separate

3

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ARMAN ANVARI'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL
3:17-CV-07095-RS

lawsuit is necessary to assert these claims.

MacDonald argues that the *MacDonald* action is not subject to a PSLRA discovery stay and that this should preclude consolidation. *GGCC* Dkt. No. 74 at 5. However, the main inquiry in deciding whether to consolidate actions under Rule 42(a) is the existence of common issues of "law or fact," not the existence of discovery opportunities in one case versus another. Additionally, MacDonald has not made any showing why discovery is necessary during the pendency of the motion to dismiss, and the Court has already denied MacDonald's attempt to seek expedited discovery. *See MacDonald* Dkt. No. 69 at 2 (noting that allowing MacDonald to obtain early discovery before "the Swiss defendants have ... had the chance to contest … jurisdiction" would only "further complicate efforts to consolidate and streamline the litigation of these cases"). At the end of the day, the simple reality is that the attorneys for MacDonald and Trigon, working as a group, are just seeking to preserve a role for themselves in this litigation by carving out a separate action, at the expense of the best interests of the proposed Class of Tezos investors.

### III. MR. ANVARI HAS THE LARGEST FINANCIAL INTEREST IN THE LITIGATION, AND IS THE PRESUMPTIVE LEAD PLAINTIFF

"[T]he Reform Act provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy. Once it determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) (emphasis in original). It is undisputed that, of all the competing movants, Mr. Anvari "has the largest financial interest in the relief sought by the class …." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). Pursuant to the PSLRA, Mr. Anvari is therefore the presumptive Lead Plaintiff.

Here, all the competing movants concede that Mr. Anvari's claims are typical of the claims of other Class members under Rule 23. They nevertheless point to certain purported deficiencies in Mr. Anvari's Motion and question his adequacy to represent the interests of the Class. As set forth below, the competing movants have grasped at straws.

### IV. MR. ANVARI'S MOTION WAS TIMELY AND CORRECTLY FILED

The competing movants' first contention is that, on the PSLRA statutory deadline, Mr. Anvari filed his Motion only in the *MacDonald* action, instead of in the *GGCC* action. According to the competing movants, the failure to file in the *GGCC* action by the PSLRA statutory deadline rendered Mr. Anvari's Motion untimely. These arguments hold no water.

*First*, the competing movants offer no legal basis for their argument that Mr. Anvari should have filed in the *GGCC* action alone. The PSLRA simply provides that "any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 77z-1(a)(3)(A)(II). The statute does not prescribe the mechanics by which the motion is to be made, and nowhere does it require a plaintiff to move for lead plaintiff status in any particular one of several related actions.

*Second*, MacDonald's counsel Hagens Berman, through a notice and website publicizing the *MacDonald* action, directed absent class members to file Lead Plaintiff motions in *MacDonald* and nowhere else. See *GGCC* Dkt. No. 61-2, Lee Decl., Ex. A (the "Hagens Notice"). The Hagens Notice contained a link to a dedicated Hagens Berman webpage with information for the *MacDonald* action, not the *GGCC* action or any other action. Ta Reply Decl.,[3] Ex. A. The notice and website directed investors to "CASE NUMBER: 3:17-cv-07095-JSC." The Hagens Notice listed a "Lead Plaintiff Deadline" of "January 25, 2018" and stated that the action concerned "unregistered offering and sale of securities *in violation of Sections 5, 12(a)(1) and 15 of the Securities Act of 1933*." Lee Decl., Ex. A (emphasis added).

In short, MacDonald and Hagens Berman published a PSLRA notice and website that directed investors to file in the *MacDonald* action by the January 25, 2018 "Lead Plaintiff Deadline." Lee Decl., Ex. A; Ta Reply Decl., Ex. A. Mr. Anvari's Motion attached and timely responded to the Hagens Notice. See *MacDonald* Dkt. No. 70-1. As such, it is preposterous for MacDonald and Hagens Berman to now argue that *MacDonald* is the wrong case in which to file.

---

[3] "Ta Reply Decl." refers to the Reply Declaration of Hung G. Ta in Further Support of Arman Anvari's Motion for Appointment as Lead Plaintiff and Approval of Counsel, dated February 15, 2018.

5

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ARMAN ANVARI'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL
3:17-CV-07095-RS

To the extent counsel for MacDonald and Trigon now believe it was error for Mr. Anvari to file in *MacDonald*, it was an error of their own making.[4]

*Finally*, none of the competing movants were prejudiced in any way – nor could they be – by Mr. Anvari's filing in the *MacDonald* action. Here, the Court had determined that the *MacDonald* action was related to the *GGCC*, *Okusko* and *Baker* actions more than a month prior to the lead plaintiff motion deadline. *See GGCC* Dkt. Nos. 11 and 15. The Court made this determination based on competing movant MacDonald's own motion in the *GGCC* action, which counsel for Trigon and MacDonald jointly filed. *GGCC* Dkt. No. 14. In addition, at the time Mr. Anvari filed his Motion, two of the competing movants – the Tezos Investor Group and plaintiffs Lang, Coffey, and Gaviria (the "Gaviria Group") – had already moved to consolidate *MacDonald* with the related actions. *GGCC* Dkt. Nos. 38, 49. Finally, in addition to filing his Motion in the *MacDonald* action by the statutory deadline, Mr. Anvari refiled his Motion papers in the *GGCC* action the next day in order to ensure that all competing movants had notice of his Motion. *GGCC* Dkt. No. 61. Mr. Anvari has fulfilled all of his obligations under the law and his Motion was procedurally proper.[5]

---

[4] Indeed, unofficial notices such as the one published by Hagens Berman have been condemned by the MANUAL FOR COMPLEX LITIGATION as potentially "misleadi[ng]" and subject to "abuse." MANUAL (Fourth) at § 31.31: "notices have been filed by attorneys on multiple occasions in related cases 'over and again, all in an effort to compile the largest portfolio of clients' .... Scrutiny [by the court] of the early notices the plaintiff proposes to disseminate, with a critical eye towards any language that 'extols' the virtue of the firm or otherwise solicits support for the lawyer-proposed lead plaintiff, may assist in reducing the incidence of these tactics. In addition, the judge should try to ensure that these early communications to class members … do not mislead them." *Id. See also In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1021 (N.D. Cal. 1999) ("Although this notice was expected by Congress to be <u>published once</u> ... the [repeated] notices in practice extol the lawyer filing suit .... Not only does the first counsel to file give notice but so do many other lawyers ... not once but over and again, ... The race to the courthouse has been replaced by a race to both the courthouse and thence to the publisher.") (underline emphasis added).

[5] None of the cases the competing movants cite in support of their "lateness" argument involved a lead plaintiff movant who ***did timely file a motion*** within the 60 day deadline, as is the case here. *See Skwortz v. Crayfish Co.*, 2001 WL 1160745, at *5 (S.D.N.Y. Sept. 28, 2001) (movant filed nothing until after the 60 day deadline); *In re Microstrategy Inc., Sec. Litig.*, 110 F. Supp. 2d 427, 433 n.12, 440 (E.D. Va. 2000) (same); *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) (reciting the 60-day procedural requirement); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 819 (N.D. Ohio 1999) (movant filed new complaint after 90 day period in which the Court must begin its consideration of lead plaintiff motions); *Carson v. Clarent Corp.*, 2001 WL 1782712, at *2 (N.D. Cal. Dec. 14, 2001) (movant filed two weeks after 60 day deadline and

6

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ARMAN ANVARI'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL
3:17-CV-07095-RS

In sum, the competing movants' arguments that Mr. Anvari should have filed in one related action as opposed to another have no basis in law and merely serve to distract from the central focus of the PSLRA, *i.e.*, which movant has the largest financial interest in the litigation.[6]

## V.    MR. ANVARI'S CERTIFICATION IS PROPER

Several of the competing movants argue that Mr. Anvari submitted a "deficient" certification under 15 U.S.C. § 77z-1(a)(2), because his certification was not "personally signed," but instead signed by his attorneys with Mr. Anvari's permission. These arguments are wrong.

As a threshold matter, Mr. Anvari's certification was not subject to the "personally signed" requirement of 15 U.S.C. § 77z-1(a)(2) ("Certification *filed with complaint*"), which requires that "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and *filed with the complaint*." (emphasis added). Thus, by its own terms, § 77z-1(a)(2) applies only to a plaintiff who has filed a complaint, not a movant (like Mr. Anvari) who seeks to be appointed lead in an already-filed class action. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Labranche & Co.*, 229 F.R.D. 395, 407 (S.D.N.Y. 2004) ("it is unsettled whether a candidate for lead plaintiff who has not filed a complaint is even required to submit [ ] a certificate."); *Bhojwani v. Pistiolis*, No. 06 Civ. 13761, 2007 WL 2197836, at *8 (S.D.N.Y. July 31, 2007), *report and recommendation adopted*, 2007 WL 9228588 (S.D.N.Y. July 31, 2007) (permitting an electronic signature under the PSLRA and holding that, since "'it is unsettled whether a candidate for lead plaintiff who has not filed a complaint is even required to submit a certificate,' at this stage of the litigation, the adequacy of the certificate should not be the determinative factor in selecting the

---

"did not try to justify their late filing."); *Okla. Law Enforcement Ret. Sys. v. Adeptus Health Inc.*, 2017 WL 3780164, at *2 (E.D. Tex. Aug. 31, 2017) (movant filed only within 60 days of a renewed complaint, which was filed months after the first complaint alleging the same underlying fraud).

[6] Indeed, two of the competing movants, the Tezos Investor Group and the Gaviria Group both argued in favor of consolidating *MacDonald*. *See GGCC* Dkt. No. 76 at 21; *GGCC* Dkt. No. 38 at 4. Yet, both movants also argue that *MacDonald* was the wrong case in which to file. *See GGCC* Dkt. No. 76 at 4; *GGCC* Dkt. No. 77 at 3 n.3. These positions are self-contradictory. The overwhelming logic favoring consolidation further supports the appropriateness of filing in *MacDonald*.

7

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ARMAN ANVARI'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL
3:17-CV-07095-RS

lead plaintiff") (quoting *Pirelli*, 229 F.R.D. at 407). This is confirmed by N.D. Cal. Local Rule 3-7(c), which provides that "[a]ny party seeking to serve as lead plaintiff, but who does not also file a complaint, ***need not file the certification*** required in Civil L.R. 3-7(b)." (emphasis added)[7]

Here, Mr. Anvari submitted a certification attaching a chart that set forth his transactions in the securities that are the subject of the class actions. Mr. Anvari personally signed the attached chart to the certification setting forth his transactions and his financial interest – the key factor in determining the Lead Plaintiff. Mr. Anvari then authorized his counsel to sign the body of his certification on his behalf, because he was traveling. *See* Anvari Decl.[8] ¶ 9. No rule prohibits such an authorized signature.[9] Mr. Anvari's certification was thus proper in all respects.

## VI. MR. ANVARI'S PREVIOUS EMPLOYMENT AT THE LAW FIRM OF PERKINS COIE DOES NOT RENDER HIM INADEQUATE

The Gaviria Group argues that Mr. Anvari's former employment at Perkins Coie LLP somehow makes him "unsuitable." *GGCC* Dkt. No. 77 at 4. But "suitability" (whatever that means) is not an element of Rule 23, and is thus legally irrelevant to Plaintiff's typicality or adequacy to serve as Lead Plaintiff. Admitting that Mr. Anvari's employment at Perkins Coie LLP is of no moment to this litigation, the Gaviria Group nevertheless argue that because Perkins Coie LLP, as a firm, has counselled *other* cryptocurrency startups, Mr. Anvari is somehow conflicted from serving as lead plaintiff in *this* litigation. *Id.*

In the first place, Mr. Anvari never worked on any cryptocurrency assignments while employed at Perkins Coie LLP. Anvari Decl. ¶ 5. In any event, law firms take positions as advocates on behalf of their clients all the time, without necessarily sharing those views. The Gaviria Group's counsel has taken different positions in different securities class actions in the

---

[7] The certification required in Civil L.R. 3-7(b) is the same certification as required under § 77z-1(a)(2) of the PSLRA.

[8] "Anvari Decl." refers to the Declaration of Arman Anvari in Support His Motion for Appointment as Lead Plaintiff and Approval of Counsel, dated February 15, 2018.

[9] In a footnote, the Tezos Investor Group alleges that Mr. Anvari's certification contains "false statements" because it was executed in Chicago. *GGCC* Dkt. No. 76 at 6 n.6. Mr. Anvari resides in Chicago, signed his loss chart in Chicago, read his certification in Chicago and authorized his counsel to sign from Chicago as he was on his way to the airport. *See* Anvari Decl. ¶ 9. Nothing about the certification is false.

8

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ARMAN ANVARI'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL
3:17-CV-07095-RS

past when it suits their interests – for example, advising some clients to lead a class action, and then telling other clients in other securities litigations that they should opt out of the class actions because opting out is more favorable. Furthermore, the Gaviria Group does not explain why the views of Perkins Coie LLP, as a firm, would necessarily be the views of its former employee, Mr. Anvari.

As reflected in his declaration, Mr. Anvari is a highly sophisticated cryptocurrency investor, more sophisticated than any of the other competing movants (if such comparisons were even permissible under the PSLRA). In addition, far from disqualifying him, the fact that he is an attorney himself means Mr. Anvari can better supervise his lawyers and participate in the lawsuit, all of which makes Mr. Anvari the ideal plaintiff as contemplated by the PSLRA.

## VII.   MR. ANVARI'S CHOICE OF COUNSEL SHOULD BE APPROVED

As their final argument, the competing movants mount a carefully coordinated attack on Mr. Anvari's choice of counsel, arguing that they are inadequate and that this purportedly negates Mr. Anvari's adequacy to serve as Lead Plaintiff. Defendants' arguments are factually and legally incorrect.

*First*, contrary to the competing movants' baseless assertions, the attorneys *do* have experience prosecuting securities class actions. For example, while he was employed at Grant & Eisenhofer P.A., Mr. Ta, the principal of HGT Law, handled from inception through obtaining court-approved settlements the securities class actions *In re Am. Dental Partners, Inc. Sec. Litig.*, No. 08-cv-10119-RGS (D. Mass.) and *In re Shuffle Master, Inc. Sec. Litig.*, No. 2:07-cv-00715-KJD-RJJ (D. Nev.), and worked on other securities class actions such as *In re Stone & Webster, Inc. Sec. Litig.*, No. 00-10874-RWZ (D. Mass.). Since Mr. Ta founded HGT Law, the attorneys of HGT Law have brought direct (opt-out) securities litigation cases on behalf of investors, including against Dendreon Corporation (*Bolling v. Gold*, No. 13-00872 (W.D. Wash.)) and Valeant Pharmaceuticals International, Inc. (*Colonial First State Investments Limited v. Valeant Pharmaceuticals, Inc.*, No. 18-cv-00383 (D. N.J.) and (*Ahuja v. Valeant Pharmaceuticals International, Inc.*, No. 18-cv-00846 (D. N.J.)). Ta Reply Decl. ¶ 6.

In addition, HGT Law's attorneys were employed at Milbank Tweed Hadley & McCloy LLP, where they defended multiple class actions. Ta Reply Decl. ¶ 7. Furthermore, apart from their experience handling securities class actions, Mr. Anvari's counsel have handled numerous class actions in other contexts. The principals of LTL Lawyers, alumni of Quinn Emanuel Urquhart & Sullivan LLP, for example, have a strong track record of success in both obtaining class certification as well as defeating class allegations, and have been repeatedly designated as adequate class counsel by California courts. *See GGCC* Dkt. No. 61-5, Lee Decl., Ex. D at 2-3.

In short, Mr. Anvari's attorneys are no strangers to securities class actions or to any other form of complex litigation. Contrary to the competing law firms' disparaging accusations, Mr. Anvari's counsel are accomplished litigators with extensive experience in this field.[10]

*Second*, even if the competing movants' criticisms of Mr. Anvari's counsel had any merit (which they do not), they would *still* not be sufficient to render Mr. Anvari inadequate under Rule 23. In *Cavanaugh*, 306 F.3d at 732, the Ninth Circuit held that, once "the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements." While the Court may consider the putative lead plaintiff's choice of counsel in assessing the adequacy of the lead plaintiff under Rule 23, the *Cavanaugh* court held that "this is not a beauty contest; the district court has no authority to select for the class what it considers to be the best possible lawyer or the lawyer offering the best possible fee schedule. ***Indeed, the district court does not select class counsel at all***." *Id.* (emphasis added). That is because "Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class." *Id*. at 732, n.11 (citation

---

[10] The Tezos Investor Group cites statements by Judge Robart in *Bolling v. Gold*, No. 13-00872 (W.D. Wash.) to suggest that proposed Lead Counsel HGT Law somehow acted improperly in that case. *GGCC* Dkt. No. 76 at 8-9. This is absurd. The issue in that case concerned a witness recanting on lengthy interviews she provided to an investigator and recorded in a detailed, six-page memorandum. The defendants raised this objection in order to defeat a motion for summary judgment. Although Judge Robart cited decisions that attorneys should personally interview a witness, there is no requirement under any ethical rules prohibiting an attorney from hiring investigators to interview a witness. Contrary to the Tezos Investor Group's insinuations of impropriety, Judge Robart did not issue any adverse rulings with respect to the witness's evidence, and the defendants did not seek any such rulings. The litigation ultimately settled on confidential terms one month before the scheduled trial date.

10

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ARMAN ANVARI'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL
3:17-CV-07095-RS

omitted). Thus, the Court's consideration of the putative lead plaintiff's choice of counsel is limited to the determination of "whether the presumptive lead plaintiff's choice of counsel is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on that plaintiff's willingness or ability to perform the functions of lead plaintiff." *Id*. at 733.[11]

But instead of proffering evidence of "self dealing," or "conflicts" that raise "genuine and serious doubt," the competing movants make unfounded challenges against counsel's expertise. However, even if Mr. Anvari's choice of counsel were inadequate in that respect (and it is not for the reasons stated above), that *still* would not hand the ball over to the competing law firms in some sort of "freewheeling" "round-robin." *Id*. at 732.[12] Indeed, "[e]ven if a presumptive lead plaintiff has selected counsel the court believes cannot adequately represent the class, this can only [support a finding of inadequacy] if the poor choice of counsel reflects some broader deficiency on his part that makes him incapable of representing the class." *Id*. at 733, n.12.[13]

---

[11] As the Ninth Circuit has held in conducting its Rule 23 inquiry, "the court must keep firmly in mind that the inquiry is not into the adequacy or fitness of counsel but into the adequacy of plaintiff, and the choice of counsel is only an indicator - and a relatively weak one at that - of plaintiff's fitness." *Cavanaugh*, 306 F.3d at 733. Indeed, "[t]hat another plaintiff has chosen counsel more wisely or parsimoniously in the district court's view will not support a finding that the presumptive lead plaintiff is inadequate to serve in that position." *Id*.

[12] The Ninth Circuit explained in *Cavanaugh* that a presumptive lead plaintiff is still the lead plaintiff "even if the court were to disapprove his choice of counsel and he were forced to seek the services of another attorney." 306 F.3d at 733, n.12.

[13] Beyond their factually and legally unfounded arguments objecting to the timeliness and the docket on which Mr. Anvari filed his Motion, the only real error the competing movements have managed to identify in counsel's papers are two citations referencing the Exchange Act, which were the result of drafting errors. *See GGCC* Dkt. No. 61, Motion at 1, 3. However, the Motion itself makes it abundantly clear that it was filed in for the purpose of seeking lead plaintiff status in cases asserting "claims for, among others, violations of Sections 12(a)(1) and 15(a), 15 U.S.C. §§ 77l(a)(1), 77o(a), of the Securities Act of 1933," and that the Tezos ICO "is alleged to have been an illegal offer and sale of unqualified and unregistered securities in violation of the Securities Act of 1933." *Id*. at 3, 6. Indeed, "relatively minor miscalculations do not serve as a basis for disqualifying [the presumptive lead plaintiff]." *Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004); *In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346, 351 n.12 (S.D. Cal.1998) (same); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 410–11 (D. Minn. 1998) (allowing plaintiff movant to supplement certifications in order to correct technical deficiencies in original filing); *Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479-EJL-CWD, 2011 U.S. Dist. LEXIS 18247, at *35 (D. Idaho Feb. 24, 2011) (rejecting argument concerning certification adequacy and holding that "[t]he failure to correct obvious or inconsequential clerical errors, like the ones at issue, is not the type of adequacy issue that would divert the fact finders' attention from the merits and thus infect the claims of the class as a whole") (internal citation omitted).

11

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ARMAN ANVARI'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL
3:17-CV-07095-RS

## VIII. CONCLUSION

For the foregoing reasons and the reasons set forth in his other memoranda of law, Mr. Anvari respectfully requests that the Court issue an Order (1) appointing Arman Anvari as Lead Plaintiff; (2) approving LTL Attorneys LLP and Hung G. Ta, Esq., PLLC as Co-Lead Counsel for the Class; and (3) granting such other relief as the Court may deem to be just and proper.

Date: February 15, 2018

LTL ATTORNEYS LLP

By: *s/Enoch H. Liang*
Enoch H. Liang
LTL ATTORNEYS LLP
601 Gateway Boulevard, Suite 1010
South San Francisco, California 94080
Tel: 650-422-2130
Fax: 213-612-3773
enoch.liang@ltlattorneys.com

James M. Lee
Caleb H. Liang
LTL ATTORNEYS LLP
300 S. Grand Ave., 14th Floor
Los Angeles, California 90071
Tel: 213-612-8900
Fax: 213-612-3773
james.lee@ltlattorneys.com
caleb.liang@ltlattorneys.com
Hung G. Ta
JooYun Kim
Natalia D. Williams
HUNG G. TA, ESQ., PLLC
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 646-453-7290
Fax: 646-453-7289
hta@hgtlaw.com
jooyun@hgtlaw.com
natalia@hgtlaw.com

*Proposed Co-Lead Counsel for Movant Arman Anvari and the Class*

12

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ARMAN ANVARI'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL
3:17-CV-07095-RS